STATE, Respondent, v. PASZEK, Appellant.

*No. State 129.   Argued March 4, 1971.—Decided March 30, 1971.*
(Also reported in 184 N. W. 2d 836.)

For the appellant there was a brief by *Thomas P. Guszkowski*, attorney, and *Whyte, Hirschboeck, Minahan, Harding & Harland* of counsel, all of Milwaukee, and oral argument by *Mr. Guszkowski.*

For the respondent the cause was argued by *Lee Edward Wells*, assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren*,

attorney general, and *E. Michael McCann,* district attorney.

BEILFUSS, J. The defendant was arrested without a warrant on January 22, 1969, at about 1 p. m., in front of the Oakland Pharmacy on Oakland Avenue in Milwaukee, Wisconsin. The arrest was made by Officer William Danowski of the vice squad of the Milwaukee police department, on information supplied to him by Mrs. Judy Darling, a clerk at the Oakland Pharmacy. The defendant was searched immediately after the arrest and a small quantity of a weedy substance was found in his pockets. This weedy substance was marijuana.

The defendant made a timely motion to suppress the introduction of the marijuana in evidence upon the ground that it was obtained as a result of an illegal search and seizure following an illegal arrest. The motion was denied, and it is the ruling on this motion which forms the basis of this appeal.

The question is whether the arrest without a warrant was illegal for want of a probable cause.

The pharmacy clerk, Mrs. Darling, testified that at approximately 10:30 a. m., on January 22, 1969, the defendant entered the pharmacy with a girl named Carol Schwabe. Mrs. Darling knew Carol Schwabe but did not know the defendant. He was introduced to her by Carol Schwabe as "Gary." Mrs. Darling, after some hesitancy because of instructions from her employer, sold them some gummed cigarette papers. A conversation followed and the defendant asked Mrs. Darling if she wanted to buy some marijuana. He removed a container from his pocket and handed it to her. It contained a substance which looked to her like marijuana. The defendant told here that it was marijuana from Mexico. Mrs. Darling stated that she did not want to purchase any but told them to come back to the store at about 1 p. m., that afternoon. The defendant and Carol Schwabe then

had a soda at the pharmacy soda fountain and left the store about 11 a. m., indicating that they would be back around 1 p. m.

After the defendant and Carol Schwabe left, Mrs. Darling informed her employer of the occurrence and he told her to call the vice squad of the Milwaukee police department. She called at about 11 a. m., and informed the officer with whom she spoke of the conversation she had had with the defendant. Mrs. Darling was reluctant to identify herself when speaking with the officer, but finally did so.

About twenty-five or thirty minutes later, three or four officers came into the pharmacy and Mrs. Darling spoke with Officer Danowski. She described what had taken place and then went back to her regular work. When the defendant returned to the store around 1 p. m., she indicated to Officer Danowski that he was the person who had offered to sell her marijuana.

Officer William Danowski testified that at about noon on January 22, 1969, he received a telephone call from Mrs. Darling informing him that someone was at the Oakland Pharmacy trying to sell marijuana. He stated that she identified herself with some reluctance. He then proceeded directly to the pharmacy and arrived there at approximately 12:50 p. m. Upon arriving at the pharmacy with other officers he interviewed Mrs. Darling who gave him a description of the defendant and stated that he attempted to sell her marijuana. Officer Danowski asked her if she had any idea what marijuana looked like and she stated that she did and had seen it on previous occasions.

Officer Danowski then parked his police car and kept the entrance to the pharmacy under surveillance. He observed a person matching the description given him by Mrs. Darling enter the store and followed him in a short time later. He had no conversation with Mrs. Darling at this time, but she pointed to defendant. Officer Danowski

then approached the defendant, identified himself as a police officer, and stated that he had information that the defendant possessed marijuana. He asked the defendant to step outside, advised him that he was under arrest, and made a search of his person. Officer Danowski found a small quantity of crushed weed and seeds and a packet of gummed cigarette papers in his jacket pocket. This material was placed back in defendant's pocket and he was transported to the Safety Building where his jacket was removed and the contents of his pocket forwarded to the city chemist for analysis. The city chemist testified at trial that the substance was marijuana.

Whether Officer Danowski had probable cause to arrest the defendant and search him pursuant to that arrest is a matter of federal constitutional law. "Probable cause" to arrest is a requirement of the fourth amendment of the United States Constitution, binding upon the individual states through the fourteenth amendment. *Giordenello v. United States* (1958), 357 U. S. 480, 485, 78 Sup. Ct. 1245, 2 L. Ed. 2d 1503. This court has recognized that art. I, sec. 11 of the Wisconsin Constitution is substantially like the fourth amendment of the United States Constitution, and that the standards and principles surrounding the fourth amendment are generally applicable to the construction of art. I, sec. 11. Therefore a finding of probable cause under federal standards will normally result in a finding of probable cause under state standards. *Browne v. State* (1964), 24 Wis. 2d 491, 503, 129 N. W. 2d 175, 131 N. W. 2d 169. Conversely, under *Giordenello v. United States, supra,* a lack of probable cause under federal standards precludes a constitutionally valid finding of probable cause under state standards.

Probable cause to arrest refers to that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime. *Henry v. United States* (1959), 361 U. S. 98, 102, 80

Sup. Ct. 168, 4 L. Ed. 2d 134. It is not necessary that the evidence giving rise to such probable cause be sufficient to prove guilt beyond a reasonable doubt, nor must it be sufficient to prove that guilt is more probable than not. It is only necessary that the information lead a reasonable officer to believe that guilt is more than a possibility, *Browne v. State, supra,* and it is well established that the belief may be predicated in part upon hearsay information. *Draper v. United States* (1959), 358 U. S. 307, 79 Sup. Ct. 329, 3 L. Ed. 2d 327. The quantum of information which constitutes probable cause to arrest must be measured by the facts of the particular case. *Wong Sun v. United States* (1963), 371 U. S. 471, 83 Sup. Ct. 407, 9 L. Ed. 2d 441. Probable cause is defined in *Draper v. United States, supra,* p. 313, as:

" 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Brinegar v. United States, supra,* at 175 [(1949), 338 U. S. 160, 69 Sup. Ct. 1302, 93 L. Ed. 1879]. Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll v. United States,* 267 U. S. 132, 162."

If an arrest is invalid, a search incidental to that arrest is also invalid, and if evidence obtained by a search incidental to an illegal arrest is admitted into evidence and has a prejudicial effect upon the defendant's case, then fourteenth amendment due process requires that a subsequent conviction must be set aside. *Mapp v. Ohio* (1961), 367 U. S. 643, 81 Sup. Ct. 1684, 6 L. Ed. 2d 1081. Conversely, if an arrest is valid, a search incidental to that arrest is proper, and evidence obtained in that search may be received in evidence.

The defendant in this case was arrested without a warrant and upon information supplied to Officer Danowski by Mrs. Darling. He argues that since the officer did not have any direct knowledge of Mrs. Darling's reliability as an informer he did not have sufficient probable cause to make the arrest and, consequently, any evidence found during the resulting search should have been suppressed. The defendant frames his argument against the validity of his arrest in two propositions. First of all, he argues that Officer Danowski did not possess sufficient knowledge to constitute probable cause because an arrest without a warrant on an informer's tip requires that the informant be known to the police, and that the police from their own direct knowledge know the informant to be reliable. *Jones v. United States* (1960), 362 U. S. 257, 80 Sup. Ct. 725, 4 L. Ed. 2d 697; *Draper v. United States, supra; Browne v. State, supra.* Secondly, he argues that even if the knowledge which Officer Danowski possessed had been communicated to a neutral and detached magistrate it would not have been sufficient to allow the issuance of a warrant under the two-pronged test of *Aguilar v. Texas* (1964), 378 U. S. 108, 84 Sup. Ct. 1509, 12 L. Ed. 2d 723, and *Spinelli v. United States* (1969), 393 U. S. 410, 89 Sup. Ct. 584, 21 L. Ed. 2d 637.

In discussing the validity of an arrest without a warrant in *Wong Sun v. United States, supra,* the United States Supreme Court stated at pages 479, 480:

"Whether or not the requirements of reliability and particularity of the information on which an officer may act are more stringent where an arrest warrant is absent, they surely cannot be less stringent than where an arrest warrant is obtained. Otherwise, a principal incentive now existing for the procurement of arrest warrants would be destroyed. The threshold question in this case, therefore, is whether the officers could, on the information which impelled them to act, have procured a warrant for the arrest of Toy. . . ."

The same test is applicable in the instant case. On the basis of the information which impelled him to act, could Officer Danowski have procured a warrant for the defendant's arrest? We believe he could.

In *Aguilar v. Texas, supra,* the supreme court established certain guidelines concerning the quantum of evidence which the officer must possess and present to the magistrate in order to establish sufficient probable cause to authorize the issuance of a warrant based upon hearsay information. Simply stated, the two-pronged test of *Aguilar* requires that the officer must establish: (1) The underlying circumstances from which he concludes that the informant is reliable; and (2) that the underlying circumstances or manner in which the informant obtained his information is reliable.

The manner in which this test should be applied was further delineated by the court in *Spinelli v. United States, supra,* where the court said at pages 415, 416:

". . . Where, as here, the informer's tip is a necessary element in a finding of probable cause, its proper weight must be determined by a more precise analysis.

"The informer's report must first be measured against *Aguilar's* standards so that its probative value can be assessed. If the tip is found inadequate under *Aguilar,* the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration? *Aguilar* is relevant at this stage of the inquiry as well because the tests it establishes were designed to implement the long-standing principle that probable cause must be determined by a 'neutral and detached magistrate,' and not by 'the officer engaged in the often competitive enterprise of ferreting out crime.' *Johnson v. United States,* 333 U. S. 10, 14 (1948). A magistrate cannot be said to have properly discharged his constitutional duty if he

relies on an informer's tip which—even when partially corroborated—is not as reliable as one which passes *Aguilar's* requirements when standing alone."

Applying the *Aguilar/Spinelli* analysis to the instant case, the first question is in what manner did the informant, Judy Darling, arrive at the conclusion that defendant possessed and was attempting to sell marijuana?

The evidence supplied by Mrs. Darling clearly shows that her conclusion was not based upon casual rumor or the defendant's reputation. Rather, it establishes that her information resulted from an unsolicited physical confrontation with the defendant. The defendant, himself, made an unsolicited oral offer to Mrs. Darling to sell her some marijuana, and proceeded to remove a container from his pocket and allowed her to hold it and examine its contents, which he specifically told her consisted of marijuana from Mexico. Therefore the information supplied to Officer Danowski was not grounded upon further hearsay, but was based upon what the defendant had said to Mrs. Darling and what acts he had performed in her presence. Mrs. Darling related all this information to Officer Danowski before, not after, the arrest.

Recently, in discussing the manner in which informants had acquired the information which they related to the complainant, this court said:

"Here the fact is that the complaint shows that all whose information was relied upon were eyewitnesses to the portion of the event they related to the sworn complainant. If hearsay is to be credited at all for this limited purpose, what better basis can there be than that of eyewitness testimony. To use the term of Mr. Justice WHITE, the hearsay was clearly based upon 'observation.'" *State ex rel. Cullen v. Ceci* (1970), 45 Wis. 2d 432, 446, 173 N. W. 2d 175.

The defendant argues that Mrs. Darling's conclusion was not based on adequate grounds since she was not

qualified to determine that the substance which he exhibited to her and offered to sell her was in fact marijuana. When Officer Danowski interviewed Mrs. Darling before the arrest he asked her if she had any idea what marijuana looked like. She stated that she did, and that the substance which defendant had exhibited to her was indeed marijuana. During the trial Mrs. Darling testified that her prior exposure to marijuana had consisted of seeing pictures of it in general, nonscientific magazines, and once having seen some at a distance of between 20 to 30 feet in a courtroom.

Clearly, Mrs. Darling was not qualified to give an expert opinion as to the nature of the substance which defendant offered to sell her. However, such scientific accuracy was not required at this stage. Her opinion that the substance was marijuana was used in the realm of establishing probable cause, not to uphold a conviction. Her observation of the substance, coupled with defendant's statement to her that it was marijuana, was amply sufficient to sustain her opinion.

We conclude that the manner in which Mrs. Darling obtained her information clearly meets the standard established in *Aguilar, supra,* and that Officer Danowski could properly have accepted her conclusion that defendant possessed and was attempting to sell marijuana.

The primary thrust of the defendant's argument is aimed at the second element of the *Aguilar* test, the circumstances from which the officer could conclude that Mrs. Darling was a reliable informer. There is a long line of cases holding that the reliability of an informant must be established by proof that other information furnished by him has resulted in arrests and convictions. This could not have been done here since Mrs. Darling was previously unknown to Officer Danowski and apparently had never supplied information to the police before. Therefore, under the traditional rule, the information which she supplied could not have pro-

vided the probable cause needed to arrest, and the subsequent search was unlawful.

However, if some basis can be found to establish confidence in the reliability of Mrs. Darling, then the instant case would appear not unlike *Draper v. United States, supra,* where probable cause was found when a reliable informer's otherwise hearsay story of heroin possession by the subject was corroborated only by the circumstance that the subject, matching the informer's description, was recognized by the agent at the time and place predicted by the informer. Recently, in *United States v. Mitchell* (8th Cir. 1970), 425 Fed. 2d 1353, Judge BLACKMUN, writing for the court, held that notwithstanding *Aguilar* and *Spinelli, Draper* is still good law for prearrest facts which parallel that case.

A different rationale exists for establishing the reliability of named "citizen-informers" as opposed to the traditional idea of unnamed police contacts or informers who usually themselves are criminals. Information supplied to officers by the traditional police informer is not given in the spirit of a concerned citizen, but often is given in exchange for some concession, payment, or simply out of revenge against the subject. The nature of these persons and the information which they supply conveys a certain impression of unreliability, and it is proper to demand that some evidence of their credibility and reliability be shown. One practical way of making such a showing is to point to accurate information which they have supplied in the past.

However, an ordinary citizen who reports a crime which has been committed in his presence, or that a crime is being or will be committed, stands on much different ground than a police informer. He is a witness to criminal activity who acts with an intent to aid the police in law enforcement because of his concern for society or for his own safety. He does not expect any gain or concession in exchange for his information. An informer of this type usually would not have more than one oppor-

tunity to supply information to the police, thereby precluding proof of his reliability by pointing to previous accurate information which he has supplied.

". . . We note, initially, that a valid arrest without a warrant may be made solely by reason of information communicated by a reliable informant. [Citations omitted.] A citizen who purports to be a victim of or to have witnessed a crime is a reliable informant even though his reliability has not theretofore been proved or tested. [Citations omitted.] The rationale underlying this principle is that such a person, as the observer of criminal activity, acts openly in aid of law enforcement when he reports the crime to the police. [Citations omitted.]" *People v. Bevins* (1970), 6 Cal. App. 3d 421, 85 Cal. Rptr. 876.[1]

In this case Mrs. Darling had no personal interest in defendant's arrest, nor did she expect to receive any personal benefit in exchange for her information. Rather, she was a mere citizen who informed her employer of criminal activity which she had witnessed in the store and, pursuant to his instructions, reported the incident to the police. It would be unreasonable to demand the same showing of prior reliability in the case of such an informer as in the case of a "traditional police informer." Rather, the reliability of such a person should be evaluated from the nature of his report, his opportunity to hear and see the matters reported, and the extent to which it can be verified by independent police investigation.

The nature of Mrs. Darling's "tip" falls within the scope of citizen informer. She was not a police informer, but simply a citizen who had witnessed criminal activity in her presence. Therefore, the element of prior reliability should not be adhered to. However, there must be some safeguard, and this can be satisfied by verifica-

[1] *Also see: People v. Hoffman* (1970), 45 Ill. 2d 221, 258 N. E. 2d 326; *People v. Lewis* (1966), 240 Cal. App. 2d 546, 49 Cal. Rptr. 579.

tion of some of the details of the information reported, but it need not be to the same degree as required in evaluating the "tips" of a police informer.

Mrs. Darling gave Officer Danowski a description of defendant and the clothes he was wearing, related the details of the incident which had occurred that morning, and gave him the time and place of defendant's appearance. Officer Danowski kept the pharmacy under surveillance until he saw a person matching Mrs. Darling's description enter the pharmacy at the predicted time. When he followed him into the store, Mrs. Darling affirmatively indicated to Officer Danowski that defendant was the individual who had attempted to sell her marijuana. This in our opinion was sufficient corroboration.

Under the facts of this case we conclude that Officer Danowski performed his police function well; he had ample facts upon which to reach a belief of a reasonable police officer that the defendant probably had marijuana in his possession. We therefore hold the arrest without a warrant was legal and the search and seizure incident thereto was also legal.

*By the Court.*—Judgment affirmed.