Howard Charles **ERICKSON** and Malcolm Allen Ericson, Appellants,

v.

**STATE of Alaska, Appellee.**

Malcolm Allen **ERICSON**, Appellant,

v.

**STATE of Alaska, Appellee.**

Nos. 1521, 1542.

Supreme Court of Alaska.

March 5, 1973.

\* \* \* \* \*

**510**

**511**

Herbert D. Soll, Public Defender, Anchorage, Dick L. Madson, Asst. Public Defender, Patrick E. Murphy, Fairbanks, for appellants.

John E. Havelock, Atty. Gen., Juneau, Monroe N. Clayton, Dist. Atty., James M. Hackett, Lyle R. Carlson, Asst. Dist. Attys., Fairbanks, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

## OPINION

ERWIN, Justice.

### I

Appellants Howard Charles Erickson and Malcolm Allen Ericson were convicted in the superior court under an indictment charging them with possession of marijuana and LSD for the purpose of sale. In addition, Allen Ericson was separately convicted in the district court under a criminal complaint charging simple possession of marijuana; the misdemeanor conviction was affirmed on appeal to the superior court.[1] A claim of unlawful search and seizure provides the single basis for challenge to the validity of the convictions in this consolidated appeal.

### II

On the evening of Friday, April 3, 1970 Mr. and Mrs. David Baldwin were having dinner with Miss Mary Lynn Kennedy, a neighbor. At approximately 8:30 that evening appellant Allen Ericson arrived seeking Miss Kennedy's roommate, who was away however. The Baldwins invited Allen to join them. During the course of conversation, Allen stated that he had come to Fairbanks from Seattle to sell marijuana. Allen also used the Baldwins' telephone to call an unidentified person in Seattle, informing the latter that there were "plenty of jobs" in Fairbanks; after the call, Allen explained that the reference to employment opportunities was a prearranged signal for the other person to come to Fairbanks with drugs.

At approximately midnight that same evening Mr. Baldwin contacted the Fairbanks police department and related the above events to Detective Gustafson. The officer requested that Mr. Baldwin obtain a physical description of the person coming from Seattle and an estimate of the quantity of drugs being brought.[2]

Mr. Baldwin saw appellant Howard Erickson for the first time Sunday morning, April 5, 1970, in Miss Kennedy's apartment. At that time Allen and Howard were placing portions of three brick-like substances composed of brownish-green straw material into small baggies. The three bricks were in an open suitcase. Later that day, Mr. Baldwin called Detective Gustafson and related his earlier observations of appellants' packaging activities. Mr. Baldwin then agreed to come to the police station in order to execute an affidavit for a search warrant for Miss Kennedy's apartment.

Before departing, Mr. and Mrs. Baldwin informed Miss Kennedy that the police knew about the drugs and were going to search her apartment. Despite their assurance that she would not be arrested, Miss Kennedy became extremely upset and ran outdoors. The Baldwins followed in order to calm her, and Miss Kennedy returned to her apartment. Fearing that she would de-

---

1. All three convictions were for violations of AS 17.12.010. Howard was sentenced to seven years imprisonment. Allen received a sentence of seven years imprisonment with two suspended on the felony conviction and a sentence of 160 days incarceration with 80 days suspended and a $300 fine on the misdemeanor conviction.

Execution of the sentences has been stayed pending this appeal.

2. Mr. Baldwin declined a request that he attempt a buy with "police money" on the ground that through their earlier conversation Allen knew that Mr. Baldwin did not take drugs.

stroy or conceal the drugs, Mr. Baldwin followed Miss Kennedy. He observed Miss Kennedy take the suitcase outside and deposit it in a small ditch behind their building, covering it with snow and sticks. Mr. Baldwin, again fearing destruction or concealment of the drugs when Allen and Howard returned, retrieved the suitcase and delivered it to the police station at approximately 7:00 p. m.

The locked suitcase was subsequently pried open by Detective Gustafson, without authorization of a search warrant, in the presence of two other police officers, a district attorney, and a district court judge.[3] After a field test of the substance found inside the suitcase indicated marijuana,[4] appellants were arrested. A subsequent strip search of Allen yielded a small quantity of marijuana on his person which provided the basis for the misdemeanor charge.

At the preliminary hearing on the felony charges the district court judge denied a motion to suppress. The judge first reasoned that no fourth amendment search and seizure occurred prior to the forcible opening of the suitcase at the police station because neither Miss Kennedy nor Mr. Baldwin were acting as agents of the police. Nor was the forcible opening at the police station considered a prohibited search, since:

> Baldwin knew what was in it—or thought he did. He thought correctly, so that when he authorized the opening of the bag after he—at the police station, he was not authorizing a search, he'd

already made the search, he was just authorizing (indiscernible) saying, sure you look at it too, I already have.

The thought seems to be that abundant probable cause negates the need for a search warrant. The judge concluded the oral ruling with an "empty formality" discussion:

> . . . I don't think the constitution or rule 37 . . . are intended to be directed to empty formalities . . . . There was nobody's house and/or grounds to be entered into, there was no need to—to talk to anyone else, there was no need to show the right for authority or to preserve peace at the time the—the suitcase was opened to look at its contents. . . . So far as the privacy is concerned . . . defendant's themselves had already voluntarily surrendered that by showing the contents of the suitcase to both Baldwin and Miss Kennedy. To prepare a warrant would have been empty formality, made to work at a typewriter . . . .[5]

The judge who presided at the felony trial denied a second motion to suppress on the sole ground that "city police officers did not take any part or contrivance in the observance or the acquisition of the suitcase involved. . . ."

A suppression motion made to the district court trying the misdemeanor charge was denied,[6] the judge stating simply, "The court finds the search and seizure of the subject suitcase was not unreasonable within the meaning of the constitution of the

---

3. The judge was at the police station that evening in order to preside over a hearing for issuance of a search warrant. Called to testify at appellants' preliminary hearing, the judge said that he felt sufficient information had been revealed at the police station to justify issuing a search warrant but that he "did not feel, the suitcase being personalty and in the possession of an individual who had brought it to the police station and authorized its opening, that it would be requisite for there to be a search warrant." The judge therefore orally directed Detective Gustafson to open the suitcase forcibly.

4. Approximately three hundred pills, later found to contain LSD, were also recovered from the suitcase.

5. District Court Judge Miller presided over the preliminary hearing on the felony charges.

6. The object of the suppression motion was the marijuana found on the person of appellant Allen Ericson. However, the grounds for that motion related to the validity of the suitcase search which, Allen Ericson argues, provided the probable cause for his arrest and the subsequent search.

United States or the constitution of the State of Alaska. . . ."

In the appeal of the misdemeanor conviction to the superior court, the suitcase search was again found to be constitutional. The judge first noted that the initial seizure of the suitcase was without the knowledge or contrivance of the police and therefore constitutionally permissible. Secondly, he did not consider the warrantless opening of the suitcase by the police to have been impermissible:

> Once taken, it did not constitute a constitutionally protected area. Further, the police action in opening the suitcase once it was at the police station was not such as to fall within that area for which the courts have devised prophylactic legislation against abusive police tactics.

The main issue presented in this consolidated appeal is whether the warrantless search of the suitcase violated appellants' constitutional rights to be free from unreasonable searches and seizures. In addition, a subsidiary issue is posed by Allen Ericson's appeal from his misdemeanor conviction: assuming the suitcase search to be unlawful, did that illegality taint the subsequent arrest and, thereby, the marijuana found during the search incident to that arrest?

### III

The fourth amendment to the federal constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, § 14 of the Alaska Constitution provides a similar guarantee.

An initial issue raised by appellants in this case is whether an unlawful seizure of the suitcase occurred when Mr. Baldwin removed it from the ditch and transported it to the police station. However, it is unnecessary to decide the seizure issue since, as will appear below, the warrantless search of the locked suitcase by the police was unlawful.

■ A fourth amendment search clearly occurred when Officer Gustafson forcibly opened the suitcase.[7] The contraband was not in plain view so as to obviate a search.[8] For, as Justice Traynor stated:[9]

> It is inherently impossible for the contents of a closed opaque container to be in plain view regardless of the size of the container or the material it is made of. A search of the container is necessary to disclose its contents.

Nor did statements by Mr. Baldwin that he had seen marijuana in the suitcase serve to place its contents in "constructive" plain view. Justice Traynor rejected just such an argument in a case where police opened a bag without a warrant from which an informant stated marijuana had previously been given him:

> This contention overlooks the difference between probable cause to believe

---

7. In Brown v. State, 372 P.2d 785, 790 (Alaska 1962), this court adopted the following definition of the term "search":
 A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way.
 *See also* Weltz v. State, 431 P.2d 502, 505 (Alaska 1967); Pope v. State, 478 P.2d 801, 805 (Alaska 1971).

8. "[T]he mere observation of items which are in plain view or which are open and apparent, is not a search." Klockenbrink v. State, 472 P.2d 958, 961 (Alaska 1970) (Footnote omitted.). *Accord* Pope v. State, 478 P.2d 801, 805 (Alaska 1970); Stevens v. State, 443 P.2d 600, 602 (Alaska 1968); Weltz v. State, 431 P.2d 502, 505 (Alaska 1967); Brown v. State, 372 P.2d 785, 790 (Alaska 1962).

9. People v. Marshall, 69 Cal.2d 51, 69 Cal.Rptr. 585, 589, 442 P.2d 665, 669 (1968).

contraband will be found, which justifies the issuance of a search warrant, and observation of contraband in plain sight, which justifies seizure without a warrant. However strongly convinced officers may be that a search will reveal contraband, their belief, whether based on the sense of smell or other source, does not justify a search without a warrant.[10]

Finally, since the police were laboring under no uncertainty as to the ownership of the suitcase, it would also be specious to argue that they were not conducting a "search" but rather were attempting to determine the ownership of lost property.[11]

The facts of this case indicate that such a search was unwarranted. For a number of years, this court and the Supreme Court of the United States have been attempting to establish guidelines for search and seizure.[12] Because it is clear from the record that some confusion still exists, we will attempt to broadly summarize the law of search warrants so as to obviate as far as humanly possible any future misunderstanding.

■■ Although opinions of the Supreme Court of the United States, which we are bound to follow, in the area of search and seizure have been characterized as a maze or a "quagmire",[13] there is a "polar star" which has been used as a starting point for analysis in most cases. The starting point is the United States Supreme Court's preference for search warrants in all cases on the ground that interposing an orderly procedure whereby a neutral and detached magistrate makes the decision is far better than allowing those engaged in the competitive enterprise of ferreting out crime to make hurried decisions which are reviewable by hindsight judgment.[14] While the fourth amendment prohibits only unreasonable searches,[15] this court has repeatedly cautioned that a search without a warrant is per se unreasonable unless it clearly falls within one of the narrowly defined exceptions to the warrant requirement.[16]

■ These exceptions are basically four in number.[17]

10. *Id.* 69 Cal.Rptr. at 588, 442 P.2d at 668. *See also* Faubion v. United States, 424 F. 2d 437, 440 (10th Cir. 1970), in which the court held that a "search" occurred when police officers opened a suitcase belonging to the defendant although the defendant had previously admitted that the suitcase contained guns.

11. Nor can it be argued that the suitcase was abandoned so that appellants either lacked standing to challenge the search or lacked the required expectation of privacy.

12. McCoy v. State, 491 P.2d 127, 132 (Alaska 1971); Bargas v. State, 489 P.2d 130, 132 (Alaska 1971); Ferguson v. State, 488 P.2d 1032, 1037 (Alaska 1971); Rubey v. City of Fairbanks, 456 P.2d 470, 474 (Alaska 1969); Sleziak v. State, 454 P.2d 252, 256 (Alaska), cert. denied 396 U.S. 921, 90 S.Ct. 252, 24 L.Ed.2d 202 (1969); Weltz v. State, 431 P.2d 502, 505–507 (Alaska 1967); Ellison v. State, 383 P.2d 716, 719 (Alaska 1963). *See also* Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967);

13. Chapman v. United States, 365 U.S. 610, 622, 81 S.Ct. 776, 782, 5 L.Ed.2d 828, 837 (dissenting opinion Clark, J.).

14. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

15. Sleziak v. State, 454 P.2d 252, 260 (Alaska), cert. denied 396 U.S. 921, 90 S.Ct. 252, 24 L.Ed.2d 202 (1969); Bargas v. State, 489 P.2d 130 (Alaska 1971).

16. See cases cited at note 12, *supra.*

17. The question of "search" without entry, i. e., electronic eavesdropping or search of vehicles, will not be discussed as they are beyond the scope of the present case. The categories recited are not exclusive and are very general. Other courts have expanded the number of categories to as

(a) The authorities have the right to make warrantless search incident to a lawful arrest.[18] However, the scope of that search is limited:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. . . . In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.[19]

(b) Police may also enter premises without a warrant when they are in hot pursuit of an offender.[20] Once inside, the police may search for the suspect anywhere in the house where he might be hiding. The emergency nature of this situation distinguishes it from the previous one.

(c) If there is imminent destruction of *known* evidence, then a warrantless search is permissible.[21]

(d) If there is an effective consent, a warrantless search may be conducted.[22] Note however, that "consent to a search, in order to be voluntary, must be unequivocal, specific and intelligently given, uncontaminated by any duress or coercion, and is not lightly to be inferred." [23]

"[A]ny new exception to the warrant requirement, no matter how reasonable in terms of its purpose, is viewed with caution." [24]

■■ The warrant requirement is not limited to dwelling houses. Neither the language of the fourth amendment, nor any case construing it which we have found, suggests that warrants are required for "houses" but not for "effects." The exceptions to the warrant requirement are generally based on the circumstances of the search, not the physical nature of the thing to be searched. The warrant requirement, unless otherwise excused, ap-

---

many as eight. *See* Wheeler v. Goodman, 330 F.Supp. 1356 (W.D.N.C.1971).

18. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).

19. Chimel v. California, 395 U.S. 752, 762–763, 89 S.Ct. 2034, 23 L.Ed.2d 685, 694 (1969); *accord* McCoy v. State, 491 P.2d 127 (Alaska 1971). Note that the seizure of articles out of arrestee's control will sometimes be permitted on the ground that they were in plain view of an officer lawfully present on the premises to make an arrest. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Klockenbrink v. State, 472 P.2d 958 (Alaska 1970); Stevens v. State, 443 P.2d 600 (Alaska 1968).

20. Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Weltz v. State, 431 P.2d 502, 507 (Alaska 1967).

21. *See e. g.* Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); United States v. Barone, 330 F.2d 543 (2nd Cir. 1964).

22. Sleziak v. State, 454 P.2d 252, 257–258 (Alaska), cert. denied, 396 U.S. 921, 90 S.Ct. 252, 24 L.Ed.2d 202 (1969); Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946); *see also* Ferguson v. State, 488 P.2d 1032 (Alaska 1971); McGalliard v. State, 470 P.2d 275 (Alaska 1970).

23. Rosenthal v. Henderson, 389 F.2d 514 (6th Cir. 1968); Sleziak v. State, 454 P.2d 252, 257–258 (Alaska), cert. denied, 396 U.S. 921, 90 S.Ct. 252, 24 L.Ed.2d 202 (1969).

24. Ferguson v. State, 488 P.2d 1032, 1035–1036 (Alaska 1971).

plies to those circumstances where there is a reasonable expectation of privacy.[25]

Since Mr. Baldwin did not have any independent right of access to or authorization, express or implied, from appellants to open the suitcase, any consent by him to a search of the suitcase would be invalid. Nor was there any likelihood that the suitcase would be removed and any contraband possibly contained therein destroyed. The suitcase was in the possession of the police; a district court judge and competent witnesses were immediately available for a warrant hearing. Thus, there was no emergency situation existing.

■ ■ While suitcases can be analogized to automobiles in search and seizure cases, the United States Supreme Court in Coolidge v. New Hampshire, 403 U.S. 443, 461–462, 91 S.Ct. 2022, 2036, 29 L.Ed.2d 564, 580 (1971), made it clear that the presence of an exigency exception to the warrant requirement must be determined under the factual circumstances of the search rather than the abstract potential for mobility or destruction of the thing searched:

> The word "automobile" is not a talisman in whose presence the Fourth Amendment fades away and disappears. . . . [B]y no possible stretch of the legal imagination can this be made into a case where 'it is not practicable to secure a warrant' . . . .

It is clear, then, that the warrantless search of the suitcase was unreasonable and failure to suppress evidence obtained thereby was error.

### IV

■ ■ Assuming the search of the suitcase to have been unlawful, appellant Allen Ericson argues that his conviction for simple possession must also be reversed because the suitcase search tainted the search of his person which was carried out incident to his arrest. It is well settled that the exclusionary rule renders inadmissible evidence obtained indirectly as a result of an unlawful search or seizure as well as evidence directly obtained thereby. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The question for determination is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Id. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455. Once a causal connection is established between the proffered evidence and the primary illegality, the evidence must be excluded unless it falls within the "independent source," "attenuated connection," or "inevitable discovery" limitations.[26] The determination of these issues is a factual one.

A review of the factual background of the case reveals the following chronology:

1. A phone call by Mr. Baldwin (a concerned citizen) on Friday, April 3, 1970, detailing that he had witnessed the following:
 a. Allen Ericson stating he had come to Fairbanks from Seattle to sell marijuana.
 b. Allen Ericson phone an unidentified person in Seattle, informing the latter that there were "plenty of jobs" in Fairbanks, defendant explained this was a signal for the other person to come to Fairbanks with drugs.
2. A phone call by the same Mr. Baldwin on April 5, 1970 (about 6:40 p. m.) relating the following information:
 a. When Allen Ericson was downtown a short while before he did not have any drugs in his possession.
 b. That Baldwin had seen defendant and Howard Erickson placing por-

---

25. Katz v. United States, 389 U.S. 347, 356–357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967).

26. See Annot., 43 A.L.R.3d 385 (1972).

tions of three brick-like substances composed of brownish-green straw material into small baggies.

c. During this same conversation, Baldwin stated he had seen "the stuff" in the suitcase.

All of this took place *prior* to the illegal search of the suitcase.

 The two conversations between Officer Gustafson and Mr. Baldwin are by themselves enough to justify the arrest of Allen Ericson for a violation of AS 17.12.-010 (possession for the purpose of sale). A police officer is usually authorized to arrest without a warrant if he has probable cause to believe a felony has been committed and a reasonable belief that the person to be arrested is the one who committed it.[27] Probable cause is more than the good faith of the officer making the arrest.[28] In Soolook v. State,[29] we held that probable cause for arrest exists if the facts and circumstances known to the officer would warrant a prudent man in believing that an offense had been or was being committed. In *Soolook*, this court stated:

In Goss v. State, 390 P.2d 220 (Alaska) we said in part that: 'Since the arrest, in this case was also made without a warrant, its lawfulness depends on whether it was based on probable cause, which exists if the facts and circumstances known to the officer would warrant a prudent man in believing that an offense had been or was being committed.' [Footnote omitted.] [30]

The question thus becomes whether the police had probable cause to arrest the defendant without the evidence obtained by the illegal search of the suitcase. The answer in this case is yes. Probable cause may rest on reasonable trustworthy information from an informant.[31] When information is provided by a cooperative citizen,[32] or an informant not from the criminal milieu there is less need for establishing credibility of the informant. The court in State v. Paszek [33] stated:

A different rationale exists for establishing the reliability of named 'citizen-informers' as opposed to the traditional idea of unnamed police contacts or informers who usually themselves are criminals. Information supplied to officers by the traditional police informer is not given in the spirit of a concerned citizen, but often is given in exchange for some concession, payment, or simply out of revenge against the subject. The nature of these persons and the information which they supply convey a certain impression of unreliability, and it is proper to demand that some evidence of their credibility and reliability be shown. One practical way of making such a showing is to point to accurate information which they have supplied in the past.[34]

27. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964); Ford v. United States (Kimble v. United States), 122 U.S.App.D.C. 259, 352 F.2d 927 (1965); AS 12.25.030.

28. Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134, 138 (1959).

29. 447 P.2d 55, 65 (Alaska 1968), cert. denied, 396 U.S. 850, 90 S.Ct. 107, 24 L. Ed.2d 99 (1969).

30. 447 P.2d 55, 65 (Alaska 1968), cert. denied, 396 U.S. 850, 90 S.Ct. 107, 24 L.Ed.2d 99 (1969), quoting Merrill v. State, 423 P.2d 686, 698–699 (Alaska 1967).

31. See United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

32. See Jaben v. United States, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965).

33. 50 Wis.2d 619, 184 N.W.2d 836 (1971).

34. *Id.* at 842; *see also* United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

An ordinary citizen who reports a crime stands on a much different footing.[35] He acts with an intent to aid the police in law enforcement because of a concern for society or his own safety. Since the citizen informer often provides information only once, there is little opportunity to establish credibility or reliability in the most common manner—comparison with accurate information provided in the past.

We hold that a valid arrest may be made on information provided by a "citizen informer" and that the informer's prior reliability need not be established before the arrest. The only caveat placed on such a rule is that some of the details of the information must be verified before arrest occurs.[36]

It is thus necessary to examine the basis of the information relayed by Mr. Baldwin both over the phone and in person to police officers. Mr. Baldwin relayed accounts of defendant's conversation regarding drug sales including statements of one defendant that both defendants had come to Fairbanks to sell marijuana. He *actually witnessed* defendants placing the "brownish-green straw material" into small baggies and place them in the suitcase *before the illegal search of the suitcase took place*. Mr. Baldwin informed Miss Kennedy that the police were coming to search her apartment and actually observed Miss Kennedy hide the suitcase outside the building. The suitcase was taken from that location to the police station. Officer Gustafson was told that defendants were going downtown with Baldwin, and he followed the threesome and observed them. It would seem that "the facts and circumstances known to the officer would warrant a prudent man in believing that an offense had been or was being committed."[37]

Allen Ericson's main contention rests on the proposition that the police themselves did not feel that they had probable cause to arrest him prior to the search of the suitcase. This conclusion is based on the following portion of the transcript:

Officer Gustafson testified:

Q. Now why didn't you make the arrest of say Malcom [Allen] Ericson that afternoon . . . on Second Avenue?

A. Because at that time we didn't have the suitcase or know what was in it.

Q. In other words, at that time you didn't have probable cause to make an arrest?

A. In the afternoon?

Q. Yes.

A. No.

The entire portion of Officer Gustafson's testimony on cross-examination demonstrates that he did not say that there would have been no probable cause but for the illegal search of the suitcase. What he did say is that in the early afternoon when he was observing defendant at the pool hall he did not feel there was probable cause to arrest him. This may have been because at this time the only evidence against the defendant was Mr. Baldwin's phone call relating the story of appellant Allen Ericson's *comments* regarding his purpose in Fairbanks and the mysterious phone call to Seattle. This may not have been sufficient cause to justify the warrantless arrest of defendant for the felony of possession of drugs for sale, but this point does not have to be decided. The crucial element is that *after* the observation of defendant at the pool hall in the afternoon, Officer Gustafson received a phone call from Mr. Baldwin detailing an eye witness account of ap-

35. United States v. Bell, 457 F.2d 1231, 1238–1239 (5th Cir. 1972); State v. Paszek, 50 Wis.2d 619, 184 N.W.2d 836, 842–843 (1971); People v. Hoffman, 45 Ill.2d 221, 258 N.E.2d 326, 328 (1970); People v. Bevins, 6 Cal.App.3d 421, 85 Cal.Rptr. 876, 879 (1970).

36. State v. Paszek, 50 Wis.2d 619, 184 N.W.2d 836, 843 (1971); *cf.*, Mattern v. State, 500 P.2d 228 (Alaska 1972).

37. Soolook v. State, 447 P.2d 55, 65 (Alaska 1968), cert. denied, 396 U.S. 850, 90 S.Ct. 107, 24 L.Ed.2d 99 (1969).

pellants Allen Ericson and Howard Erickson preparing drugs for sale. At that point there was probable cause for the arrest of the defendant *prior* to the illegal search of the suitcase. The fact that the suitcase was subject to an illegal search should not taint the evidence of the second search. Again the test posed by Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963), was whether the evidence objected to was obtained by the "exploitation" of the initial illegality or means "sufficiently distinguishable" to be "purged of the primary taint". The arrest could have been based on the "independent source" of the conversations with Mr. Baldwin. *See* Annot., 43 A.L.R.3d 385 (1972).

The defense relies on the proposition that there would have been no arrest but for the illegal search of the suitcase. This seems to be pure conjecture based on the fact that the illegal search was made. However, the search of the suitcase can be viewed as "frosting on the cake" since there was enough probable cause to arrest defendant before the search, based on the first hand reports of Mr. Baldwin. The fact that the intervening search of the suitcase was illegal should not relate back and taint the basis for probable cause existing before the search. The evidence known to the police prior to the search of the suitcase seems a valid basis on which to arrest defendant. Accordingly, the search incident to the arrest and defendant's subsequent misdemeanor conviction should be affirmed. As the court stated in Jacobs v. Warden, Maryland Penitentiary, 367 F.2d 321, 323 (4th Cir. 1966), "[t]he fruit-of-the-poisonous-tree doctrine need not be extended to its seedlings."

The decision of the superior court is affirmed in part and reversed in part.