**Richard HODSDON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–241.**

Court of Appeals of Alaska.

May 3, 1985.

---

Richard B. Brown, Faulkner, Banfield, Doogan & Holmes, Anchorage, for appellant.

Jeffrey W. Cole, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before SINGLETON and COATS, JJ., and DIMOND, Senior Justice.*

## OPINION

DIMOND, Senior Justice.

Hodsdon was convicted of the offense of misconduct involving a controlled substance in the fourth degree, i.e., for delivering one ounce or more of marijuana, in violation of AS 11.71.040(a)(2). He appeals on the ground that the superior court erred in denying his motion to suppress a search warrant.

The search warrant involved authorized electronic surveillance [1] of a drug transaction between Hodsdon and Bernice Hartman. In a magistrate hearing on the application, the only evidence offered by the Alaska State Troopers to support the application for the warrant was the testimony of Bernice Hartman.

Hartman testified that she had arranged the drug sale the night before, and that at 11:00 o'clock that day at the Palmer Arms Apartments she was going to give Hodsdon $400 for two ounces of marijuana. She also testified that during the preceding months she had bought marijuana from Hodsdon on three separate occasions.

At the conclusion of the hearing the magistrate found there was probable cause to believe that there would be a sale of marijuana as testified to by Hartman, and he authorized the issuance of a search warrant to permit an electronic monitoring of the drug transaction between Hodsdon and Hartman. The transaction took place and Hodsdon was indicted. Hodsdon moved to suppress the evidence gained by the electronic recording. The motion was denied after a hearing before Superior Court Judge Cutler.

■ Hodsdon argues that the motion to suppress ought to have been granted because Hartman's testimony did not meet the two-pronged test of *Aguilar-Spinelli* [2] established by the United States Supreme Court. The first prong of this test would require the state to demonstrate that the informant (here Hartman) obtained the information in a reliable manner. The second prong would require that the informant be trustworthy. *Schmid v. State*, 615 P.2d 565, 574–75 (Alaska 1980).

■ Hodsdon's reliance on the *Aguilar-Spinelli* test is misplaced because "those cases set forth criteria for ascertaining the

---

* Dimond, Senior Justice, sitting by assignment made pursuant to Article IV, section 11, of the Constitution of Alaska.

1. In *State v. Glass*, 583 P.2d 872, 881 (Alaska 1978), it was held that under the right to privacy guaranteed by the Alaska Constitution, a search

warrant is generally required before permitting electronic monitoring of conversations.

2. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

reliability and credibility of informants who have provided hearsay information." *Bell v.` State,* 668 P.2d 829, 836 (Alaska App. 1983).[3] Hartman was not a confidential informant whose information was related by someone else—e.g., a police officer. Hartman testified personally under oath, and the magistrate thus had the opportunity to assess her credibility.

 Generally, there are two kinds of informants, namely, a "good citizen informant" and a "police informant." The former consists of an ordinary citizen who acts with intent to aid the police because of concern for society or for his or her own safety. There is less need for establishing the credibility of such an informant. His or her reliability need not be established before an arrest, or as ,in this case, before issuance of a search warrant. *See Erickson v. State,* 507 P.2d 508, 517–19 (Alaska 1973). The other kind of informant is commonly referred to as a "police informant," and here credibility and reliability must be shown. In *Erickson,* the supreme court adopted with approval the following statement from the Wisconsin case of *State v. Paszek*[4]:

A different rationale exists for establishing the reliability of named 'citizen-informers' as opposed to the traditional idea of unnamed police contacts or informers who usually themselves are criminals. Information supplied to officers by the traditional police informer is not given in the spirit of a concerned citizen, but often is given in exchange for some concession, payment, or simply out of revenge against the subject. The nature of these persons and the information which they supply convey a certain impression of unreliability, and it is proper to demand that some evidence of their credibility and reliability be shown. One practical way of making such a showing

is to point to accurate information which they have supplied in the past. *Erickson,* 507 P.2d at 517.

At the hearing on the motion to suppress, a witness named Sean Sloan testified that he knew both Hodsdon and Hartman and of the relationship between the two of them. He stated that Hartman told Sloan that she was in love with Hodsdon, and that Hodsdon "liked" her. He further testified that Hodsdon broke off the relationship about three weeks before the arrest, and that Hartman was quite angry and violent about this turn of events. Sloan stated that Hartman damaged Hodsdon's motorcycle on one occasion and tried to throw it off a bridge another time. She said on several occasions that she would "like to see somebody set him [Hodsdon] up to get thrown in jail," and that the last time she made such a statement was about a week or so before Hodsdon was arrested.

Hodsdon also testified. He said that when he ended his relationship with Hartman, her reaction was violent, referring principally to the incidents involving his motorcycle. Furthermore, it was brought out at the suppression hearing that Hartman had been convicted of shoplifting in 1982, and again in 1983, and that the magistrate had previously ordered Hartman to go to the Alaska Psychiatric Institute for counseling.

At the conclusion of the suppression hearing, Judge Cutler found that Hartman was a police informant, as opposed to a good citizen informant, and this meant that the magistrate, on application for an electronic search warrant, had to closely scrutinize Hartman's testimony because Hartman was one within the "criminal milieu," and not just a person "who just walked off the street and never been connected with any crimes."[5]

**3.** Another possible reason for not basing a decision on *Aguilar-Spinelli* is that it has been abandoned by the United States Supreme Court. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *But see Jones v. State,* 681 P.2d 364 (Alaska App.1984), *petition for hearing granted* (Alaska, July 13, 1984) (no probable

cause for issuance of warrant under either *Gates* or *Aguilar-Spinelli* analyses).

**4.** 50 Wis.2d 619, 184 N.W.2d 836, 842 (1971).

**5.** In *Erickson,* the court said:
Probable cause may rest on reasonable trustworthy information from an informant.

 It is true that Hartman had two convictions of shoplifting. While we are reluctant to agree that Hartman was of the "criminal milieu" which means that her environment, associations or surroundings were connected with criminals or crime in general, Judge Cutler correctly concluded that Hartman was not a good citizen informant either, given her prior convictions and her statements that she had bought marijuana herself from Hodsdon on three occasions.

At least one of Hartman's motives in testifying, according to information elicited at the hearing on the motion to suppress, may well have been to express her anger at Hodsdon for jilting her. This, together with her two convictions for shoplifting, would probably place Hartman somewhere between a citizen informant and a police informant. Because of that, the establishment of her credibility, reliability or trustworthiness would have to be of concern to the magistrate in deciding whether to issue the warrant.

Hodsdon contends that because of neglect by the police and material misstatements of fact made by Hartman, the magistrate was not made aware (1) of the nature and extent of Hartman's criminal offenses, and (2) of the true relationship between Hartman and Hodsdon which had a material bearing on her motive for testifying. It is Hodsdon's position that had these matters · been known to the magistrate, there would have been no justification for issuance of the warrant.

 We find that no prejudice resulted from the police failure to inform the magistrate of Hartman's convictions for shoplifting. The magistrate was cautiously skeptical of Hartman's story. At one point the magistrate said: "Why should I believe you, Ms. Hartman?" She answered: "I don't know why you should believe me, but I know what I'm doing. And I've got

witnesses that was there at the time that me and Rick made the deal where he promised to bring across the marijuana if I give him the money." [6] Again, the magistrate questioned the reliability of Hartman as an informant by asking this question: "Given your past contacts with the Court, including my having ordered you to go to A.P.I. for psychiatric counseling, how can I be assured that you're not just concocting a story here?" Hartman answered: "Because I haven't been in trouble since the last time I showed up in your courtroom. I've been holding down a good job as security guard at Settler's Bay and I've been keeping myself out of trouble and working down at Palmer Arms Apartments during the day." There is a clear inference from the exchange between the magistrate and Hartman that the former knew of the nature and extent of Hartman's criminal offenses.

As to Hartman's motive for testifying, at the magistrate hearing Sergeant Casanovas of the Alaska State Troopers questioned Hartman as to her "actual motive" for providing this information to the police and the court. Hartman responded: "I don't mind a lot of people selling drugs, but when they start selling them to kids that are 16 years old and younger and Rick sold them to my nephew which is only 16 and he says he don't care who he sells them to just as long as he gets his money." Hartman did not state that her motive was revenge for being jilted by Hodsdon, which was brought out both by Sean Sloan and by Hodsdon himself at the hearing on the motion to suppress.

 Even if Hartman's motive had been her anger at Hodsdon, or a combination of this motive and the one she gave in responding to Sergeant Casanovas' questioning, this would not have prevented the magistrate from finding cause to issue the

When information is provided by a cooperative citizen, or an informant not from the criminal milieu there is less need for establishing credibility of the informant.
507 P.2d 508, 517 (Alaska 1973) (footnotes omitted).

**6.** The names of the witnesses referred to by Hartman were not given. Apparently Hartman did not tell Sergeant Casanovas about them.

warrant. Hartman could have been quite angry with Hodsdon, and this might have been disclosed at the warrant hearing. But this would not necessarily mean that her failure to disclose that to the magistrate would have made the motive for testifying that she did give less true, or require that the warrant should not have been issued.[7]

Finally, Hodsdon contends that Sergeant Casanovas' ignorance of Hartman's drinking and her reputation for not telling the truth cannot excuse the failure to disclose these elements of Hartman's character to the magistrate. There is some indication that Hartman had one or two drinks in the morning of the day she testified. But there is nothing in the record to indicate that Hartman was intoxicated or that she had any drinking problem which would affect her credibility. Furthermore, there is nothing in the record to show that Hartman had a reputation in the community for not telling the truth.

■ We cannot say that the magistrate was wrong in his determination, or that Judge Cutler erred in denying the motion of Hodsdon to suppress the electronic search warrant. As we have stated: "In reviewing a magistrate's determination of probable cause, this court must give deference to the magistrate's decision and must resolve doubtful or marginal cases largely by the preference to be accorded warrants." *State v. Malkin*, 678 P.2d 1356, 1359 (Alaska App.1984), *quoting Rosa v. State*, 633 P.2d 1027, 1030 (Alaska App.1981). The *Malkin* and *Rosa* cases dealt with affidavits. What we said there is even more pertinent to the case at hand where the magistrate not only heard the informant testify in person but had the opportunity to observe her demeanor. It was the magistrate's function and not that of the superior court or of this court to judge the credibility of the witness before the magistrate. We find that Judge Cutler was correct in sustaining the issuance of the electronic warrant by the magistrate and in denying the motion to suppress.

In *Erickson*, the court stated that even if information is given by a citizen informer whose reliability need not be questioned, "some of the details of the information must be verified before arrest occurs." 507 P.2d at 518.[8] The citizen informant in *Erickson*, however, did not testify under oath. He had telephoned the police with information about potential drug dealing.

■ We believe that the independent verification requirement in *Erickson* is not pertinent here where the informant was sworn and therefore subject to a perjury prosecution. In this case, where Hartman was found to be credible, her information was based on personal knowledge, and her testimony was given under oath, the warrant need not be declared invalid for lack of factual corroboration. It is true that in the case of *Jones v. State*, 681 P.2d 364 (Alaska App.1984), *petition for hearing granted* (Alaska, July 13, 1984), a warrant was declared invalid because, *inter alia*, there was no independent investigation to corroborate the allegation that Jones was a cocaine dealer. However, that case is distinguishable from the one at hand because the informant in *Jones* was not sworn and did not testify before a magistrate.

Judge Cutler was correct in denying the motion to suppress.

AFFIRMED.

BRYNER, C.J., not participating.

---

7. *Cf. Massachusetts v. Upton*, —— U.S. ——, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984) (caller's attempt at anonymity and her motivation for retaliation against defendant does not offend *Gates* "substantial basis" test for evaluating reliability of information).

8. In this opinion we have referred to the *Erickson* case. That case involved an arrest rather than a search, based upon unsworn statements made by a citizen informer. *Erickson v. State*, 507 P.2d 508 (Alaska 1973). However, in *Schmid v. State*, 615 P.2d 565, 574 (Alaska 1980), it was held that the probable cause analysis for an arrest is identical to one for issuance of a search warrant.