**Louis GONZALES, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 3397.

Supreme Court of Alaska.

Nov. 9, 1978.

Lawrence J. Kulik and Alex Swiderski, Anchorage, for appellant.

Thomas M. Jahnke and Randy M. Olsen, Asst. Dist. Attys., Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

OPINION

RABINOWITZ, Justice.

As a result of the efforts of the Fairbanks Area-Wide Narcotics Team an arrest

warrant for Louis Gonzales was obtained as well as a search warrant for his premises.[1] The investigating police officers informed Gonzales' parole officer, Ronald Murray, of their intentions to search the residence and to arrest Gonzales.

Upon executing the search warrant, the officers involved discovered that Gonzales was no longer there. They subsequently ascertained that Gonzales was in a room at the Ranch Motel in Fairbanks and went there to arrest him. After Gonzales had been placed under arrest, he allegedly consented to a search of the motel room. The search revealed a bag of milk sugar powder, which was described as a cutting material for the distribution of heroin, and various other items commonly used in the preparation of heroin for sale. During the search of the room, Gonzales, who was handcuffed, asked one of the arresting officers to remove a key from his pocket, open his attache case, remove some medication, relock the case, and then return the key to Gonzales' pocket. Gonzales' request was carried out by one of the officers. Later, Gonzales asked one of the officers to permit him to remove something from the attache case and flush it down the toilet. This request was denied.[2]

Gonzales' parole officer, Ronald Murray, arrived at the motel room some time after the search of the premises had been conducted. Murray was told that a search had taken place and was informed that the heroin cutting material had been discovered and that Gonzales had made a request to dispose of something in his attache case. Murray then announced his intention to search the attache case in accordance with his authority as Gonzales' parole officer. The parole officer's search of the attache case revealed $7,300 in cash, six or seven gold and diamond rings, and a bag containing a powder which later was determined to be 35% heroin. An indictment was subsequently returned against Gonzales charging him with possession of heroin in violation of AS 17.10.010.[3]

Gonzales then moved to suppress the heroin which was discovered in his attache case. After the superior court denied the suppression motion, Gonzales entered a plea of nolo contendere to the felony charge of unlawful possession of heroin, a narcotic drug. The superior court then sentenced Gonzales to serve a term of twenty-five years imprisonment. The term of imprisonment was made to run concurrently with all other sentences pending against Gonzales.[4] This appeal is taken from the superior court's denial of Gonzales' suppression motion and from the twenty-five year concurrent sentence of imprisonment.[5]

---

1. A grand jury had returned a two count indictment against Gonzales for separate heroin sales.

   At the time arrest was effectuated, Gonzales was on parole from the State of Washington for a ten year sentence stemming from a narcotics conviction. He was also on probation from a 1972 Anchorage drug conviction.

2. The attache case was not searched at this time because, according to the police officers' testimony, they did not intend to search the case at the motel.

3. AS 17.10.010 provides:

   It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, or compound any narcotic drug except as authorized in this chapter.

4. Approximately two weeks prior to Judge Blair's imposition of sentence in the case at bar, Judge William Taylor sentenced Gonzales to two consecutive twenty year terms of imprisonment upon his conviction after trial by jury of two separate sales of heroin in violation of AS 17.10.010. The consecutive twenty year sentences were to run consecutively to a sentence of ten years for a sale of narcotics which was handed down by the superior court in Anchorage. We have since remanded for resentencing in Gonzales' appeal from this ten year sentence. *Gonzales v. State*, 582 P.2d 630 (Alaska 1978).

5. The appeal of the superior court's ruling denying suppression relief is brought pursuant to this court's decision in *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974), which established criteria for the allowance of an appeal from a judgment entered pursuant to a plea of nolo contendere. Consistent with these criteria, Gonzales specifically reserved the issue on appeal and resolution of this issue is determinative of the case.

   *Oveson v. Municipality of Anchorage*, 574 P.2d 801 (Alaska 1978), further refines *Cooksey* by requiring that the parties must stipulate,

Gonzales first argues that the search of his attache case was not made pursuant to the administration of his parole. He contends that the search was, in fact, aimed primarily at law enforcement by agents of the Federal Drug Enforcement Administration.[6] As a law enforcement activity, Gonzales maintains that the search was subject to state and federal constitutional guarantees against unreasonable searches and seizures even though his status at the time in question was that of a parolee.[7]

Gonzales' position is that the police officers and the Drug Enforcement Administration agents were in direct control of the arrest and search of his person, personal effects, and the motel room.[8] In its order denying Gonzales' motion to suppress, the superior court found, in part, that:

> The defense claims that Murray was acting in concert with the police and was merely their agent to accomplish an otherwise illegal search. The evidence does not support this contention. Murray was

acting on his own behalf as Gonzales' parole officer. He was seeking to determine possible violations of Gonzales' conditions of parole. How could he better determine whether there were violations than to be present at Gonzales' arrest?

Our review of the record has persuaded us that the superior court did not err in concluding that the search of Gonzales' attache case was made in furtherance of the supervision of Gonzales' parole.[9]

Gonzales has advanced the further argument that parole officers lack the inherent authority to conduct warrantless searches of parolees.[10] Unless the authority is specified in the conditions of parole, Gonzales contends that the parole officer must first obtain a search warrant. No such condition was specified in Gonzales' State of Washington "Order of Parole and Conditions."

We have concluded that *Roman v. State*, 570 P.2d 1235 (Alaska 1977), is dispositive of Gonzales' contention that his parole officer

---

with the trial court's approval, that this court's resolution of the issue reserved for appeal will be dispositive of the entire case. Since *Oveson* only applies to pleas entered in the trial courts after the date of the opinion (February 3, 1978), the present appeal is properly brought to this court.

6. "Where the administrative action is merely a cover for illegal police activity, otherwise permissible administrative searches and seizures may be held invalid." *Davenport v. State*, 568 P.2d 939, 948 (Alaska 1977).

7. *State v. Sears*, 553 P.2d 907, 913 (Alaska 1976), affirmed the right of a probationer to suppress illegally seized evidence in a criminal proceeding. In *Roman v. State*, 570 P.2d 1235, 1237 n.3 (Alaska 1977), we declined to draw a distinction between parolees and probationers in deciding search and seizure questions.
   *Brown v. Kearney*, 355 F.2d 199, 200 (5th Cir. 1966), applied constitutional protections against unreasonable searches and seizures to parolees.

8. In *People v. Coffman*, 2 Cal.App.3d 681, 82 Cal.Rptr. 782, 786 (1970), the court observed that:
   > When a parole agent is justified in making a search, he may enlist the aid of the police. The parole agent's physical presence, even his nominal conduct of the physical acts of search, does not signalize validity. The purpose of the search, not the physical presence of a parole agent, is the vital element. In

*People v. Hernandez*, 229 Cal.App.2d 143, 40 Cal.Rptr. 100, 104, (1964), *cert. denied*, 381 U.S. 953, 85 S.Ct. 1810, 14 L.Ed.2d 725 (1965), we explicitly conditioned the search's validity upon a "purpose of maintaining the restraints and social safeguards accompanying the parolee's status. . . ."

9. We conclude that there is substantial evidence to support the superior court's factual determinations in this regard and that none of the court's controlling findings of fact were clearly erroneous.

10. Special Condition 4(d) of the Order of Parole and Conditions of the Washington State Board of Prison Terms and Paroles provided that Gonzales was to:
    > At no time use or have in his possession any dangerous drugs, narcotics or controlled substance without a written prescription from a licensed physician.
    The superior court excluded a copy of the Alaska Parole conditions because Gonzales had not signed them, and there was no evidence that he knew of their existence.
    Gonzales' parole was under Alaska supervision pursuant to AS 33.10.010–020, titled Interstate Compact on Probation and Parole. Parole Officer Ronald Murray testified that he had made two telephone contacts with Gonzales but had not had a personal interview with him prior to their encounter at the motel.

lacked authority to search the attache case without a warrant. *Roman* addressed the issue of the validity of a warrantless search conducted by a parole officer. The search of Roman's person was carried out by his parole officer who had information that Roman was in possession of narcotic drugs, in violation of his parole. We affirmed the warrantless search in that case based upon reasonable cause. More particularly, in *Roman* we determined the validity of the search of Roman's person upon the following analysis:

> Roman was convicted of possession of heroin. The right to request specimens for urinalysis and to search him and his quarters at reasonable times and in a reasonable manner to assure that he would not continue to possess illegal drugs is necessary to the proper functioning of the parole system. The right to perform such searches is limited to parole officers and peace officers acting under their direction. It would appear that all of these conditions were met in the search of Mr. Roman; therefore, we cannot find that the parole authorities were clearly mistaken in authorizing the search and in conducting it under these circumstances. Roman's inability to furnish a specimen for urinalysis prevented use of that means of ascertaining whether he was using drugs; and, in view of his imminent departure, it was reasonable to search his person at that time.[11] (footnotes omitted)

The state's position is that the conditions which were found controlling in *Roman* validate the warrantless search in the instant case. Here, the state argues that at the time the attache case was searched Gonzales was on parole for a heroin offense committed in the State of Washington; that the right to search Gonzales was recog-

nized in *Roman* as necessary for the proper functioning of the parole system; and that the superior court found that the search was performed by a parole officer acting within the scope of his authority. In light of *Roman* and the information which was conveyed to parole officer Murray upon his arrival at the motel, we conclude that the state's reliance upon *Roman* is appropriate and thus uphold the superior court's refusal to grant Gonzales' suppression motion.

This holding rejects Gonzales' reliance upon the following portion of *Roman*, where we said:

> [W]e hold that, except in circumstances where reasonably conducted searches and seizures are required by the legitimate demands of correctional authorities and are set forth as conditions of parole by the Parole Board, the Alaska Constitution entitles a released offender to the same protections as an ordinary person.[12] (footnote omitted)

In *Roman*, we stated that the procedural requirement of imposition of such parole conditions by the Parole Board "shall apply . . . prospectively only."[13] Additionally, it was specified there that procedural requirements, "shall apply to all persons released on parole more than thirty days after the issuance of the mandate in this appeal."[14] Gonzales does not come within the class of parolees to which the new procedural requirements of *Roman* apply. Being unpersuaded that *Roman* should be given limited retroactive effect, we conclude, for the reasons previously stated, that the warrantless search of Gonzales' attache case was not constitutionally infirm.

As noted earlier, Gonzales has also appealed as excessive his twenty-five year concurrent term of imprisonment. We have determined to retain jurisdiction of

---

11. *Roman v. State*, 570 P.2d 1235, 1243 (Alaska 1977). In a footnote to this quotation we further stated:

> As we have indicated, the authorization for searches was too broad in subjecting Roman to searches other than by or at the direction of parole officers. Since the search here was under Parole Officer Murray's direction, however, it was not within that invalid condition.

*Id.* at 1243 n.26.

12. *Roman v. State*, 570 P.2d 1235, 1237 (Alaska 1977).

13. *Id.* at 1244.

14. *Id.* at 1244 n.30.

this aspect of Gonzales' appeal and defer ruling on its merits until we have decided the issues in Gonzales' appeal in Supreme Court No. 3348. In this latter case, Gonzales seeks to overturn his convictions of two separate sales of heroin for which he received two consecutive twenty year terms.[15] Given the length of the sentences involved in the Gonzales cases and their close interrelationship, we conclude that it would be inappropriate to decide the sentence appeal in the case at bar at this time.

The judgment and conviction is Affirmed. Jurisdiction of the sentence appeal is retained for subsequent decision.