Mitchell Joseph PISTRO, Appellant,

v.

STATE of Alaska, Appellee.

No. 3474.

Supreme Court of Alaska.

Feb. 16, 1979.

Sue Ellen Tatter, Walter L. Carpeneti, Asst. Public Defenders, Brian Shortell, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, Chief Justice, CONNOR, BOOCHEVER, BURKE and MATTHEWS, Justices.

## OPINION

BOOCHEVER, Justice.

Mitchell Joseph Pistro appeals from his conviction of the offense of larceny and concealing stolen property in violation of AS 11.20.350(a).[1] He raises issues as to probable cause for his arrest, and the validity of a search of a garage and seizure of evidence. We affirm the conviction.

During the early morning hours of December 21, 1976, a blue 1972 Ford pickup belonging to Robert L. Kerr was stolen. Between 12:00 noon and 2:00 p. m. that same day, Officer Lewis A. Wodrich, III, of the Alaska State Troopers went to the Emerson residence on Erwin Road. Wodrich observed Kerr's pickup sitting in the Emerson's yard. The pickup had been "stripped down." The seat and engine were gone; and the hood, transmission, header pipes, and other portions were either on the ground or in the pickup bed.

Patrick Blair, Mr. Emerson's stepson,[2] informed Wodrich that he had been given the pickup by three men at a nearby residence. Blair gave Wodrich descriptions of the three men. He also informed Wodrich that the missing engine, seat, and other accessories were in the garage at the residence.

Wodrich had Blair go along with him to point out the residence. Wodrich could see two people in the garage. He radioed for "back-up," and Officer Hughes responded. Wodrich drove up the driveway with Officer Hughes following in another patrol car. Immediately upon turning into the driveway, about fifty or sixty feet from the garage, Wodrich observed two men and a truck inside the garage. He was able to see into the garage through the garage windows. At a distance of ten to twenty feet from the garage, while he was en route to the side door to make "contact," Wodrich first observed an engine hanging on a block and tackle next to the pickup. At that time he also observed that the two men fit the descriptions of the men described by Blair.

Wodrich reached the door to enter just as one of the men inside, later identified as Boyd Hodge, was opening the door to leave the garage. When Hodge opened the door, Wodrich said, "I am Investigator Wodrich. You are under suspicion of grand larceny."

Wodrich then stepped into the garage, backed Hodge up against the pickup, turned him around, put the other individual, the appellant in this case, against the pickup as well, and patted them down for weapons. At that time Wodrich observed that (1) the pickup had a new bumper on it, and (2) the engine hanging next to the pickup "was consistent with that type of an engine that would have come from the [stolen] pickup."

Hughes followed Wodrich into the garage. Wodrich had Hughes take Pistro to his patrol car for questioning. Wodrich then took Hodge to his vehicle.

Wodrich advised Hodge of his rights. Hodge waived them and gave a taped statement to Wodrich. Hodge agreed to release the items in the garage to Wodrich. Wodrich then re-entered the garage and "impounded" the items as evidence. He returned to the car and at that time formally arrested Hodge.

Pistro was in Hughes' custody during this time. Wodrich never spoke to him.

1. AS 11.20.350(a) specifies in pertinent part:
   Buying, receiving, or concealing stolen property. (a) A person who buys, receives, or conceals money, goods, bank notes, or other thing which may be the subject of larceny and which has been taken, embezzled, or stolen from another person, knowing it to have been taken, embezzled, or stolen, is upon conviction punishable by a fine of not more than $1,000 and by imprisonment for not less than one year nor more than three years if the property bought, received, or concealed exceeds $250 in value; . . .

2. Wodrich had independent knowledge that Blair was a convicted auto thief.

Pistro was subsequently indicted by the grand jury on December 30, 1976, for receiving and concealing stolen property.

On January 28, 1977, Pistro moved the trial court to suppress (1) the testimonial observations of Wodrich and Hughes and (2) the evidence seized from the garage. On February 14, 1977, Superior Court Judge Ralph E. Moody heard the testimony of Officer Wodrich and oral argument on the motion. The state argued the searches and seizures were lawfully made as being either incident to a lawful arrest or based on consent. Judge Moody denied Pistro's motion to suppress, finding the searches and seizures had been made incident to a lawful arrest.

Pistro was convicted and sentenced to two years imprisonment with six months suspended.

On appeal, Pistro questions the validity of his arrest and the search and seizure of the evidence.

The issue of whether probable cause existed for the arrest was argued before the superior court. Based on the "totality of the circumstances here," the superior court found that the officer had "everything that's necessary for an arrest" without a warrant pursuant to AS 12.25.030.[3]

*Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), provides a definition of "probable cause:"

Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense had been or is being committed.[4]

We adopted this definition in *McCoy v. State*, 491 P.2d 127, 129 (Alaska 1971).

Probable cause may rest on reasonably trustworthy information from an informant. However, some of the details of the information given by the informant must be verified before an arrest.[5] There was such verification in this case.

Officer Wodrich was a specialist in auto theft cases. First, the information furnished by Blair was corroborated by the stripped blue Ford pickup body and parts which were examined by the officer. It was noted that the engine was removed. When proceeding down the Hodge driveway, Officer Wodrich was able to see into the garage through its windows. When ten to twenty feet away from the garage, he observed an engine hanging on a block and tackle next to a pickup. He also observed that the two men fit the descriptions of the men described by Blair. The record in the present case thus reveals that information from the informant was sufficiently corroborated by the officer's own observations to establish probable cause for arrest.

Pistro contends, however, that the officer could not see the engine or sufficiently observe the occupants of the garage from the road. He argues that Officer Wodrich, by moving up the driveway, was trespassing and searching.

A distinction is recognized between situations involving observations made by an officer, without a warrant, while standing upon a part of surrounding property that has been expressly or impliedly opened to the public use, and one standing on property not so opened.[6] Thus, it has been held that an officer who leaves a driveway and

---

**3.** AS 12.25.030 provides:

*Grounds for arrest by private person or peace officer without warrant.* A private person or a peace officer without a warrant may arrest a person

(1) for a crime committed or attempted in his presence;

(2) when the person has committed a felony, although not in his presence;

(3) when a felony has in fact been committed, and he has reasonable cause for believing the person to have committed it.

**4.** 338 U.S. at 175–76, 69 S.Ct. at 1310–1311, 93 L.Ed. at 1890 (bracketed portions contained in original).

**5.** *City of Nome v. Ailak*, 570 P.2d 162, 170 (Alaska 1977).

**6.** *Lorenzana v. Superior Court*, 9 Cal.3d 626, 108 Cal.Rptr. 585, 589, 511 P.2d 33, 37 (1973).

crosses a portion of a yard which was not a normal access route to any door, so as to position himself next to a window in order to spy through a gap of about two inches at the bottom of a window shade, unlawfully intruded on the rights of privacy of the occupants.[7]

In contrast, a conviction was upheld which was based in part on a police officer's observations through a screen door when, without a warrant, he went by means of a normal means of access to the house leading up to a side door.[8] Similarly, observations from a common passageway between apartments have been upheld.[9] Police officers walking through an unfenced driveway to inquire at premises have been held not to invade any reasonable expectation of privacy.[10]

The driveway was a normal means of ingress and egress impliedly open to public use by one desiring to speak to occupants of the garage, or to park off the street while visiting occupants of the house. This is not a case of an officer leaving such a means of public access to spy from an area not impliedly open to the public. There was no invasion of rights to privacy, and Officer Wodrich could constitutionally observe what was in plain view in the garage.

■ Pistro next contends that the evidence obtained by the officers from the garage was illegally obtained and must be suppressed under Criminal Rule 26(g).[11] He argues that the officers, after interviewing the occupants, had no right to go back into the garage to seize the evidence.

Officer Wodrich testified that Hodge consented to release the stolen property to him.[12] We first stated the requirements for effective consent in *Sleziak v. State*, 454 P.2d 252, 258 (Alaska 1969), where we adopted the reasoning of the Court of Appeals for the First Circuit in *Gorman v. United States*, 380 F.2d 158 (1st Cir. 1967). The *Gorman* court stated, *id.* at 163–64:

> [W]hen the accused is directly asked whether he objects to the search, there must be at least some suggestion that his objection is significant or that the search waits upon his consent. When this is combined with a warning of his right to be silent, and his right to counsel, which would seem in the circumstances to put him on notice that he can refuse to cooperate, we think it fair to infer that his purported consent is in fact voluntary.

In *Sleziak*, we developed our own test for consent, under which a defendant will be held to have consented voluntarily, unequivocally, and intelligently to a search if, under the circumstances, it is reasonable to conclude that he was "put on notice that he could refuse to cooperate with law enforcement authorities." 454 P.2d at 258. In this case, Hodge was informed of his rights to remain silent and to have the assistance of

7. *Id.* 108 Cal.Rptr. at 593, 511 P.2d at 41.

8. *People v. Willard*, 238 Cal.App.2d 292, 47 Cal.Rptr. 734, 744 (1965).

9. *People v. Berutko*, 71 Cal.2d 84, 77 Cal.Rptr. 217, 453 P.2d 721, 726 (Cal.1969).

10. *People v. Johnson*, 560 P.2d 465, 468 n.1 (Colo.1977). *See also People v. McGahey*, 179 Colo. 401, 500 P.2d 977 (1972). In *Howard v. State*, 583 P.2d 827, 836 (Alaska 1978), where observations were made by police officers from an access road or driveway used as access to a lumber building, we remanded to the trial court for the purpose of determining whether the general public had access to this area of Howard's property for commercial purposes. In the context of that case in which the driveway led to a lumber building, if the roadway was used by the public as opposed to being a private roadway to which the public was not invited, it would have been for a commercial purpose. In regard to premises outside a building, however, we believe that the general test is whether the area involved is a means of ingress and egress impliedly open to public use, and that a commercial purpose is not necessarily required.

11. Criminal Rule 26(g) provides:
    *Evidence Illegally Obtained.* Evidence illegally obtained shall not be used for any purpose including the impeachment of a witness. Criminal Rule 26(g) arguably broadens the class of individuals having standing to contest the alleged violation of constitutional rights of others. The parties, however, have not briefed the issue of Pistro's right to challenge the consent obtained from Hodge. Accordingly, we express no opinion on this issue.

12. The consent was given during an interview between Hodge and Wodrich in the patrol car.

counsel prior to consenting to the search. In this factual context, we believe that Hodge's statement to Officer Wodrich constituted effective consent to the second entry into the garage and the seizure of evidence. Thus, the warrantless seizure was valid. *Erickson v. State*, 507 P.2d 508, 515 (Alaska 1973).

AFFIRMED.[13]

---

**13.** A correct decision of the superior court on a question of law will be affirmed regardless of the reasons advanced. *Stordahl v. Government Employees Ins. Co.*, 564 P.2d 63, 67 n.16 (Alaska 1977). We do not reach the issue of whether the evidence could be seized as incident to the arrest.