**Eric CHILTON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4148.**

Supreme Court of Alaska.

May 9, 1980.

Frank Rothschild, Walter Share, Asst. Public Defenders, Brian Shortell, Public Defender, Anchorage, for appellant.

Larry R. Weeks, Dist. Atty., Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

In this appeal we are called upon to review the trial court's denial of Eric Chilton's motion to suppress certain evidence on the grounds that such evidence was the product of an illegal search. We conclude that the trial court did err in refusing to suppress the challenged evidence.

On August 1, 1976, at approximately 12:55 a. m., officers Kalwara and Bartlett of the Juneau police department were engaged in a normal foot patrol of the downtown Juneau area. As they descended Bulger Way, a wooden stairway running down Mt. Roberts between Gastineau Avenue and South Franklin Street, they heard voices apparently coming from the rear of the Gross Apartments. This apartment building is located to the right, or north, of the stairway at the point where it connects with South Franklin Street. The building faces the street and is the only building on that side of the stairway. Knowing that this area was sometimes frequented by individuals smoking marijuana, the officers decided to investigate the voices. They moved off of the public stairway through a gap in the handrailing and proceeded down a beaten path to a place where the rear of the building could be observed. The path is located about thirty feet from the building, well within the boundary of the lot, and runs parallel to the building. It does not provide access to any part of the building. Rather, it deadends in a clump of bushes. From their vantage point on the path the officers observed Eric Chilton through an open, undraped window, engaged in what appeared to be the separating and "snorting" of cocaine. These observations led to the arrest of Chilton and the seizure of a cigarette package containing a white, powdery substance later identified as cocaine. Chilton was subsequently indicted for possession of a narcotic drug in violation of AS 17.10.010.[1]

On October 12, 1976, Chilton moved to suppress the cocaine on the ground that the warrantless search of the cigarette package violated his constitutional rights. The trial court denied the motion stating that the seizure was justified under the plain view doctrine. Pursuant to a stipulation by the parties, the case was then held in abeyance pending this court's decision in *State v. Erickson*, 574 P.2d 1 (Alaska 1978).[2] Following our decision in *Erickson*, Chilton renewed his motion to suppress the cocaine, this time contending that the officers' initial observations from the path constituted

1. AS 17.10.010 provides: "It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, or compound any narcotic drug except as authorized in this chapter."

2. In *Erickson* we upheld the constitutionality of the classification of cocaine as a narcotic within the purview of AS 17.10.010.

an illegal search. The trial court denied the motion concluding that the officers had probable cause to enter the area and, in the alternative, that the path was open to anyone having a desire to use it. Chilton subsequently entered a plea of *nolo contendere* which was expressly conditioned upon the preservation of his right to appeal the trial court's rulings on the search and seizure issues.[3] This appeal followed.

We turn first to the question of the validity of the officers' initial observations. It is well settled that an officer's observation of things in plain view made from a place where he has a right to be does not constitute a search in the constitutional sense. *Daygee v. State*, 514 P.2d 1159, 1162 (Alaska 1973); *Klockenbrink v. State*, 472 P.2d 958, 961 (Alaska 1970). *See also Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1069 (1968); *Ker v. California*, 374 U.S. 23, 43, 83 S.Ct. 1623, 1635, 10 L.Ed.2d 726, 744 (1963). Conversely, when observations are made from an area to which the officer has not been expressly or impliedly invited, the intrusion is an unlawful search unless made pursuant to a warrant or one of the established exceptions to the warrant requirement. *Lorenzana v. Superior Court*, 9 Cal.3d 626, 108 Cal.Rptr. 585, 591, 511 P.2d 33, 39 (1973).[4] Once the constitutionality of the observation has been challenged through a motion to suppress, the burden is on the State to prove by a preponderance of the evidence that the officer was in a place where he had a right to be or was acting pursuant to an exception to the warrant requirement. *See United States v. Matlock*, 415 U.S. 164, 177 n.14, 94 S.Ct. 988, 996, 39

L.Ed.2d 242, 253 n.14 (1974); *Zehrung v. State*, 569 P.2d 189, 192 (Alaska 1977), *modified*, 573 P.2d 858 (Alaska 1978); *Schraff v. State*, 544 P.2d 834, 838 (Alaska 1975). Any factual determinations made by the trial court in ruling on the motion to suppress will be upheld unless clearly erroneous. *Gonzales v. State*, 586 P.2d 178, 180 n.9 (Alaska 1978).[5]

In the instant case, the officers' observations were a direct result of their warrantless entry onto private property. Nevertheless, the trial court upheld the constitutionality of the observations, concluding that the officers "had probable cause to investigate the activities called to their attention by voices coming from the area, known to be frequented by persons violating the law, and that their presence on property in fact privately owned was not constitutionally infirm." After a review of the record in its entirety, we are unable to agree with the trial court's conclusions.

For probable cause to exist, the facts and circumstances within the officers' knowledge, must be sufficient in themselves to warrant a man of reasonable caution in believing that a crime has been or is being committed. *Pistro v. State*, 590 P.2d 884, 886 (Alaska 1979); *Cruse v. State*, 584 P.2d 1141, 1144 (Alaska 1978). More than good faith on the part of the officer is required. *Erickson v. State*, 507 P.2d 508, 517 (Alaska 1973). In this case the sole basis for the officers' departure from the public way was that they heard voices apparently coming from the rear of the Gross Apartments, an area where they had previously accosted individuals smoking marijuana.[6] There is

---

3. A *nolo contendere* plea expressly conditioned on the limited right to appeal an issue which the parties have stipulated, with the trial court's approval, as being dispositive of the case effectively preserves the issue for appeal. *Oveson v. Municipality of Anchorage*, 574 P.2d 801, 803 n.4 (Alaska 1978); *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

4. *Lorenzana* provides a useful discussion of when a police officer's observations into a home will be considered a search. *See also Pistro v. State*, 590 P.2d 884 (Alaska 1979); *Phelan v. Superior Court*, 151 Cal.Rptr. 599

(Cal.App.1979); 1 W. La Fave, Search and Seizure § 2.3(c) (1978).

5. *See also Wright v. State*, 501 P.2d 1360, 1370 (Alaska 1972); *Merrill v. State*, 457 P.2d 231, 233–34 (Alaska 1969).

6. We note that the record is devoid of any evidence concerning either the number of encounters with individuals smoking marijuana that had occurred in this area or the time span in which such encounters had taken place.

nothing in the record to suggest, however, that the officers had reason to believe, either from the voices or otherwise, that such illegal activity was occurring on that particular occasion. This information alone does not rise to the level of probable cause. To allow police officers to venture onto private property merely because they hear voices coming from an area where past crimes have been committed would unduly infringe upon fourth amendment protections.[7]

■ The constitutionality of the observations thus turns upon the question of whether or not the path was an area which was impliedly open to the public. The trial court's finding that the path was "made use of by whomever happened to want to do so" was based entirely on Officer Kalwara's March 23, 1978 affidavit,[8] four undated photographs of the area which were attached to the affidavit and the trial court's viewing of the area sometime during March or April of 1978. Significantly, all of this evidence goes to the condition of the path as of March 1978, approximately one and one-half years after the observations took place. There was nothing in the record to the effect that this evidence accurately reflects the condition of the path at the time the observations were made. Moreover, the record contains absolutely no evidence pertaining to how the path was created, the extent of its use or who, if anyone, was authorized to use it. We are therefore compelled to conclude that the evidence before the trial court was wholly insufficient to establish by a preponderance of the evidence that at the time the observations were made the path was open to the public

or was otherwise a place where the officers had a right to be. This being the case, the trial court's finding to the contrary was clearly erroneous.[9]

Our dissenting colleagues, we believe, simply misinterpret our position. We do not hold that the officers had no right to be on the path when they first observed Chilton. Rather, it is our belief that no such determination can be made from the evidence in the record. Just as the evidence does not support a finding that the path was open to the public, so it would not support a finding to the contrary. Simply put, the evidence in the record is, in our opinion, wholly insufficient to support any finding regarding the officers' right to be on the path at the time the observations were made.

Since the State failed to meet its burden of proof, we are unable to uphold the constitutionality of the observations. The evidence gained as a result of these observations therefore should have been suppressed. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Inasmuch as we have decided that reversal is required on the above grounds, it is unnecessary to reach Chilton's remaining arguments.

REVERSED.

BOOCHEVER, Justice, joined by MATTHEWS, Justice, dissenting.

I dissent from the majority's holding that the officers had no right to be on the path where they first viewed Chilton because, in my opinion, the officers' conduct in this

---

7. Cf. *State v. Myers*, 601 P.2d 239 (Alaska 1979), where we upheld a warrantless entry of a commercial establishment on the grounds that due to the commercial nature of the property and the circumstances surrounding the entry the owner of the property had a diminished expectation of privacy.

8. This affidavit provided, in pertinent part:

(4) At the place where I left the stairway, there is a gap in the hand railing running along the sidewalk and a beaten path proceeding out parallel to South Franklin Street. It was on that beaten path that Officer Bart-

lett and I walked over and observed Chilton in the window:

(5) I estimate the distance from the window to the beaten path to be approximately thirty (30) feet and on a hillside overlooking Gross Apartment; the area is accumulated with trash, i. e. beer cans, bottles, old shoes and other detritus on vacant land in the downtown area of Juneau;

9. In addition to the evidence relied upon by the trial court, the dissent notes that the rear entry ways of many commercial establishments abut on the area. There is nothing in the record, however, to support this statement.

case did not invade Chilton's reasonable expectation of privacy.

The trial court found that the path "was made use of by whomever happened to want to do so." This finding is supported by substantial evidence. The hillside between South Franklin Street and Gastineau Avenue where the officers stood is overgrown with brush, and in Officer Kalwara's words, "accumulated with trash, i. e., beer cans, bottles, old shoes and other detritus" that one commonly finds on vacant urban land. Officer Kalwara had found persons smoking marijuana in back of Chilton's apartment building on prior occasions. There is no fence or other obstruction behind the building. Where the path meets the public stairway at a landing, there is an absence of a railing and easy access to the path. The path is a "very well beaten" one. No conflicting evidence was ever presented. I cannot agree that the trial court was clearly erroneous in finding that the path was impliedly open to the public.

In my opinion, given the nature of the area and its known public use, the police could utilize the path just as any other person might.[1] For fourth amendment purposes, it is not particularly significant that the officers were standing on private property when they viewed Chilton. "The technicalities of the common law of trespass are not dispositive of Fourth Amendment claims." *United States v. Vilhotti*, 323 F.Supp. 425, 431 (S.D.N.Y.1971). In *Pistro v. State*, 590 P.2d 884 (Alaska 1979), we held that evidence viewed while police officers were on the defendant's driveway was admissible because this would have been the way the public ordinarily entered the premises. There is no evidence that Chilton or the owners of the apartment building ever made an attempt to exercise any degree of control over the area in back of the building. Courts have generally held that tenants in a multiple-unit building have a lower expectation of privacy in those areas of the building or surrounding grounds which are open to common use. *See, e. g., United States v. Cruz Pagan*, 537 F.2d 554, 557–58 (1st Cir. 1976) (no expectation of privacy in underground garage); *Smith v. State*, 510 P.2d 793, 798 (Alaska), *cert. denied*, 414 U.S. 1086, 94 S.Ct. 603, 38 L.Ed.2d 489 (1973) (no expectation of privacy in dumpster belonging to apartment building); *Commonwealth v. Thomas*, 358 Mass. 771, 267 N.E.2d 489 (1971) (no expectation of privacy in the cellar of an apartment building). Although the officers did not use an area that might be connected in some way with those having business in the building, it was still an area freely used by the public. The officers did not engage in offensive conduct such as climbing onto a fire escape[2] or peering under a pulled window shade.[3] Under the circumstances, I would agree with the trial court that the officers' presence near Chilton's open window did not invade a reasonable expectation of privacy,[4] and the evidence observed by the officers was in plain view.

---

1. *See* 1 W. La Fave, Search and Seizure, § 2.3 at 325 (1978).

2. *Cohen v. Superior Court*, 5 Cal.App.3d 429, 85 Cal.Rptr. 354 (1970) (remanding to trial court for additional testimony concerning tenants' use of first escape).

3. *Lorenzana v. Superior Court*, 9 Cal.3d 626, 108 Cal.Rptr. 585, 511 P.2d 33 (1973).

4. I do not see how this case can be squared with *State v. Myers*, 601 P.2d 239 (Alaska 1979), where a majority of this court held that the police could make a warrantless entry into an unlocked movie theatre after closing hours. Certainly there is a lower expectation of privacy in an unfenced, vacant urban lot, especially given obvious signs of public use such as the path, trash and beaten-down brush, than in the interior of a building.