COATS, Senior Judge,
dissenting.
The facts in this case are undisputed. The Alaska State Troopers received a tip that Margaret Kelley was growing and selling marijuana at her residence at mile 85.5 of the Parks Highway. At approximately 12:80 am. on June 30, 2009, two members of the Mat-Su drug unit, Investigator Young and Sergeant Langendorfer, pulled into the driveway of Kelley's residence.
While still in their vehicle, both troopers smelled the odor of "fresh marijuana." The troopers were directly in front of, and downwind from, Kelley's residence. Moreover, there were no other nearby residences upwind of the Kelley residence. There was no indication that Kelley's residence was occupied, and the troopers left without attempting to contact anyone.
Based primarily on this information, the police obtained and served a search warrant on Kelley's residence. They found a number of marijuana plants as well as marijuana growing equipment. Based on this evidence, the grand jury indicted Kelley on four counts of misconduct involving a controlled substance in the fourth degree.
Kelley filed a motion to suppress in which she argued that the troopers conducted an illegal search under Article I, Section 14 of the Alaska Constitution and violated her right to privacy under Article I, Section 22 of the Alaska Constitution.
Superior Court Judge Gregory Heath denied the motion to suppress and Kelley was then convicted in a bench trial based on stipulated facts.
The majority of this Court reverses Kelley's conviction, concluding that the police acted illegally by entering her property at 12:30 a.m. to investigate the tip that she was growing marijuana.
Alaska law provides that law enforcement officers may enter onto private property to conduct an investigation without a warrant if they restrict their movements to places where an ordinary visitor would be expected to go.[1] There are no Alaska cases that restrict the time of day or night the police may *1018 use a residence's normal means of ingress and egress to investigate a crime.
In this case, Judge Heath found that the troopers entered Kelley's property by means of her driveway, which was the normal way to approach her residence. The troopers did not get out of their vehicle, and they stayed for only a few minutes Judge Heath assumed that, at 12:80 at night, the officers had the patrol car's headlights on, and that the car's engine made some noise as it approached. The judge concluded that this was not the type of "furtive" nighttime investigation that courts in some other jurisdictions have condemned.[2]
As we recognized in Michel v. State,[3] a police investigation is "as legitimate a societal purpose as any other undertaking that would normally take a person to another's front door."[4] In his treatise on search and seizure, Professor LaFave points out that the courts that have directly addressed the issue "have not been inclined to view nocturnal entries upon the curtilage as improper." [5]
In finding that the troopers' conduct in this case was illegal, the majority of this Court relies primarily on Florida v. Jardines,[6] a United States Supreme Court case. In Jardines, the Supreme Court ruled that when the police step onto a homeowner's porch with a drug-sniffing dog to investigate the contents of the home they conduct a "search" within the meaning of the Fourth Amendment.[7] Although Jardines did not involve a late-night search, the dissent, written on behalf of four members of the Court, stated that there are limitations on when a visitor may approach the front door of a residence "in the middle of the night without an express invitation."[8] However, the case the dissent relied on for that proposition, State v. Cada,[9] held only that the late hour at which a police intrusion takes place is one factor for courts to consider in determining whether the entry was lawful.[10]
The facts of Cada are far removed from Kelley's case. In Cada, the police entered Cada's property at 1:00 a.m. on June 10, 1998, to set up a thermal imaging device directed at the garage.[11] The officers, at least one of them dressed in camouflage, entered the property again on June 21, 1993, at approximately 4:00 a.m., and hid a motion-activated low-light infrared video camera and two infrared sensors in the bushes across the driveway from the garage.[12]
In Cada, the Idaho Court of Appeals held that this police entry was illegal under the Idaho Constitution.[13] The court reasoned that
furtive intrusion late at night or in the predawn hours is not conduct that is expected from ordinary visitors. Indeed, if observed by a resident of the premises, it could be a cause for great alarm. As compared to open daytime approaches, surreptitious searches under cover of darkness create a greater risk of armed response-with potentially tragic results-from fearful residents who may mistake the police officers for eriminal intruders.[14]
Similarly, in State v. Johnson,[15] the Washington Court of Appeals, applying the state constitution, found that a police entry onto *1019 the defendant's property at 1:00 a.m. to investigate a possible marijuana growing operation was illegal. But again, the time of the entry was but one factor the court considered in finding the entry illegal. The police entered the Johnsons' property via a state park, under cover of darkness. They opened a gate marked "Private Property" and "No Trespassing," walked down the road, and took readings from a thermal imaging device aimed at the barn.
The Washington court found that the closed gate marked with "No Trespassing" signs indicated that the Johnsons had a "subjective intent to close their property."[16] The court also concluded that the officers' surreptitious entry onto the Johnsons' property at 1:00 am. easily could have resulted in a violent confrontation.[17]
In State v. Ross,[18] the Washington Supreme Court likewise condemned a surreptitious police entry onto the defendant's property, in a case the court described as "very similar" to Johnson.[19]
In each of these cases, the court considered the entire context of the police entry, not just the time of the entry. Moreover, in finding that the searches were illegal, the courts emphasized that the police had engaged in "furtive activity."
As Judge Heath found, there was no furtive activity in this case. The officers drove their patrol car up Kelley's driveway, presumably with the headlights on, stayed only a few minutes, and did not get out of the car.
I would affirm Judge Heath's decision that this entry was lawful. The troopers' investigation differed markedly from the facts of the out-of-state cases that found nighttime searches illegal. Those cases involved extreme facts, where the police, in an effort to avoid detection, snuck onto the defendant's property under cover of darkness to obtain evidence. In Kelley's case, the troopers simply drove up the driveway in a patrol ear and remained there for several minutes, without getting out of the car. | The driveway was the normal approach to the house, and the troopers did not open any gates or encounter any "No Trespassing" signs.
This type of approach is unremarkable. Certainly newspapers are routinely delivered at night in this way, as might be advertisements, telephone books, or political material. An individual might drive up a driveway to check an address-or to look for the business that, according to the affidavit in support of the search warrant, shared some portion of Kelley's driveway. I see no basis for exelud-ing the police from making a similar approach.
The majority relies on the fact that Alaska law requires search warrants to be executed between the hours of 7:00 a.m. and 10:00 p.m., unless the State shows good cause. But there is a big difference between driving up the driveway and approaching a house without getting out of the car, and entering a house under the force of a warrant and searching it.
Police officers investigate crime around the clock,[20] and there is no per se rule that prohibits late-night investigations. For instance, courts find that "knock and talk" investigations, where police approach a residence, knock on the door, and talk to witnesses or suspects, are generally reasonable, even if those contacts occur late at night.[21] *1020 And courts routinely uphold much more intrusive late-night contacts than the situation presented in Kelley's case.
In my view, the opinion of the Court is not supported by any authority and runs the risk of creating uncertainty about the ability of the police to investigate crime other than during daytime hours. I therefore dissent.

. Pistro v. State, 590 P.2d 884, 886-87 (Alaska 1979); Michel v. State, 961 P.2d 436, 438 (Alaska App.1998).

. Citing State v. Johnson, 75 Wash.App. 692, 879 P.2d 984 (1994), and State v. Cada, 129 Idaho 224, 923 P.2d 469 (App.1996).

. 961 P.2d 436.

. Id. at 437-38 (quoting State v. Rigoulot, 123 Idaho 267, 846 P.2d 918, 923 (App.1992)).

. 1 Wayne R. LaFave, Search and Seizure A Treatise on the Fourth Amendment § 2.3(c) (5th ed.) (Westlaw, database updated October 2014) (citations omitted).

. - U.S. -, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013).

. Id. at 1417-18.

. Id. at 1422 (Alito, J., dissenting, joined by Roberts, C.J., and Kennedy and Breyer, JJ.).

. 129 Idaho 224, 923 P.2d 469 (App.1996).

. Id. at 478.

. Id. at 472.

. Id.

. Id. at 478.

. Id.

. 75 Wash.App. 692, 879 P.2d 984 (1994).

. Id. at 992.

. Id. at 993.

. 141 Wash.2d 304, 4 P.3d 130 (2000).

. Id. at 136.

. See, eg., Martin v. State, 297 P.3d 896, 897-900 (Alaska App.2013) (police approached a five-unit apartment complex after midnight as part of a drug investigation and saw, through a window, materials used for the manufacture of methamphetamine).

. See Fern L. Kletter, Construction and Application of Rule Permitting Knock and Talk Visits Under Fourth Amendment and State Constitutions, 15 ALR 6th 515 (2006) (stating, "Whether a knock and talk has transformed into a search or seizure is dependent upon the totality of the circumstances of each particular case.... [Where] police officers approached a residence at 2 in the morning but where lights were on inside indicating that people were awake and there was no other evidence indicating that visitors were not welcome to approach the front door of the residence{,]" no Fourth Amendment violation occurred).