**Ben J. LATHAM, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. A–2397, A–2398.**

Court of Appeals of Alaska.

April 13, 1990.

John C. Pharr, Anchorage, for appellant.

Tonja Woelber, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Ben J. Latham was convicted by a jury of robbery in the first degree and criminal mischief in the second degree. He also entered a no contest plea to a second, unrelated count of criminal mischief in the second degree. Superior Court Judge Beverly W. Cutler sentenced Latham on all counts to a composite term of eight and one half years with one and one half years suspended. Latham appeals his convictions on various grounds and his sentence as excessive. We affirm.

At about 8:00 a.m. on July 21, 1986, a masked man robbed the Hatcher Pass Grocery at gunpoint and fled in a stolen car. The Alaska State Troopers discovered the car several miles away, abandoned and broken down. Two weeks later, on August 3, 1986, the Crimestoppers line in Anchorage received a call from Ernie Hardt, who reported that Latham had committed the robbery at the Hatcher Pass Grocery. The troopers interviewed Hardt on August 11, 1986. Hardt told the troopers that he and his wife were friends of Latham. According to Hardt, at about 8:30 a.m. on the morning of the robbery, Latham came to Hardt's house in the Matanuska Valley and said that he had just robbed the Hatcher Pass Grocery. Hardt gave the troopers a detailed account of the robbery as Latham had described it.

At the request of the troopers, Hardt agreed to engage in an electronically monitored conversation with Latham. Hardt was then taken before Superior Court Judge Beverly W. Cutler to testify in support of a warrant authorizing an electronically monitored conversation. Judge Cutler found probable cause to issue a warrant, concluding that Hardt's testimony appeared credible because he was able to provide numerous details about the robbery that he would not have been aware of without having spoken with someone who was actually involved in the crime.

On August 12, troopers accompanied Hardt to Latham's home. Hardt was admitted to the residence, and troopers recorded a conversation between him and a man identified by Hardt as being Latham. Although no one actually saw Hardt and Latham together, one of the troopers who recorded the conversation later identified the voice of the person speaking with Hardt as Latham's. During the recorded conversation, Latham openly acknowledged robbing the Hatcher Pass Grocery.

Latham was charged with first-degree robbery for holding up the Hatcher Pass Grocery and with second-degree theft and second-degree criminal mischief for stealing and damaging the car that he used during the holdup.[1] Prior to trial, Latham moved to suppress his recorded conversation with Hardt, alleging that the warrant authorizing the troopers to record the conversation was not supported by probable cause. Following a hearing, Judge Cutler denied Latham's motion to suppress and admitted the recording in evidence at trial.

■ On appeal, Latham renews his challenge to the validity of the electronic surveillance warrant. He contends that the truthfulness of Hardt's testimony before Judge Cutler at the warrant hearing was not adequately established. Specifically, Latham argues that Hardt was presented to Judge Cutler as if he was a "citizen informant," even though the troopers had grounds to believe that he had previously possessed stolen property and had previously been involved in using and selling cocaine. Latham argues that, under the circumstances, Hardt was from the "criminal milieu," and his testimony therefore should have been independently corroborated.

Latham's argument is unpersuasive. The distinction between citizen informants

---

1. Latham was also charged with second-degree theft and second-degree criminal mischief as a result of an unrelated incident that the troopers learned of during the recorded conversation. Upon conviction of robbery and criminal mischief, Latham pled no contest to the second charge of criminal mischief, reserving his right to appeal the court's suppression ruling. In return, the state dismissed the second theft charge. The state and Latham agreed that Latham would receive no additional incarceration for the second criminal mischief conviction.

and informants from the criminal milieu arises from and derives its primary utility in the context of cases involving warrants based on testimony or affidavits containing hearsay provided to the police by third persons. Because the unsworn, out-of-court statement of an informant from the criminal milieu is presumptively unreliable, it is incumbent on the police to provide the court with sufficient information to establish the informant's truthfulness. *See, e.g., Erickson v. State,* 507 P.2d 508, 517 (Alaska 1973).

In contrast, when an informant appears before a judge or magistrate and testifies under oath concerning personal observations, there is no comparable need for extrinsic corroboration of the informant's veracity; the presiding judge or magistrate is able to observe the informant's demeanor, is capable of questioning the informant, and is provided further assurance by the fact that the informant's testimony is under oath. *See, e.g., Hodsdon v. State,* 698 P.2d 1224, 1228 (Alaska App.1985). Latham has cited no cases, and we are aware of none, holding that personally rendered testimony of an informant—even one from the criminal milieu—need be corroborated to support a finding of probable cause.

Here, Judge Cutler heard Hardt's testimony given under oath, observed his demeanor, and questioned him to satisfy herself as to his credibility. There was ample evidence given to support the court's conclusion that Hardt was probably telling the truth and that probable cause for issuance of a warrant existed.

█ Latham nevertheless suggests that, by withholding unfavorable information concerning Hardt's background, the troopers misled the court as to Hardt's credibility. Certainly, if the troopers had knowingly or recklessly withheld material evidence bearing on Hardt's truthfulness, the omission would have required the warrant to be declared invalid. *See State v. Malkin,* 722 P.2d 943, 946 (Alaska 1986). However, there was no attempt in this case by the troopers to present Hardt to the court as a model citizen or to misrepresent his background or motives for testifying. To the extent that the troopers were aware of possible prior misconduct by Hardt, their information would at most have had weak and indirect bearing on Hardt's credibility. When presented at the suppression hearing with the totality of the undisclosed facts that the troopers purportedly knew about Hardt, the superior court found that the information would not have altered the decision on probable cause and was therefore not material. The court's finding is not clearly erroneous. Accordingly, the court did not err in denying Latham's motion to suppress.

█ Latham next argues that the trial court erred in refusing to order a psychiatric evaluation of Hardt. However, Latham's request for a psychiatric evaluation—which was based on disclosure of records indicating that, more than five years before trial, Hardt had been diagnosed as a schizophrenic suffering from homicidal tendencies—was made for the first time in the midst of trial. Although Latham now contends that the requested evaluation was necessary to challenge Hardt's credibility as a witness, at trial he requested the evaluation for the exclusive purpose of questioning Hardt's competency to testify. In denying Latham's motion for a psychiatric evaluation of Hardt, the court found that Hardt easily met the minimal qualifications for competency to testify, a finding that Latham does not challenge on appeal. Subsequently, Latham was allowed to bring out Hardt's prior diagnosis and his history of psychiatric treatment to impeach Hardt's testimony.

Latham has presented nothing to establish that expert testimony concerning Hardt's past diagnosis as a schizophrenic would have had any significant bearing on the issue of his credibility at trial. Even assuming expert testimony might have been helpful, Latham has failed to show why such testimony could not have been based on existing evidence of Hardt's condition rather than on a new psychiatric evaluation. Finally, as the trial court correctly recognized, in view of the strength of the state's case against Latham, Hardt's credibility as a witness was hardly the cen-

tral issue at trial. Abundant independent evidence of Latham's guilt was presented to corroborate Hardt's testimony. Accordingly, Latham did not meet the applicable standard for compelling a psychiatric evaluation of a prosecution witness. *See Daniels v. State*, 767 P.2d 1163, 1167–68 (Alaska App.1989); *Anderson v. State*, 749 P.2d 369, 371 (Alaska App.1988); *Pickens v. State*, 675 P.2d 665, 668 (Alaska App.1984).

Latham further argues that the superior court erred in failing to order production of the tape recorder that was used to record his conversation with Hardt or, alternatively, in failing to impose sanctions against the state for its inability to produce the recorder.

■ Prior to trial, Latham requested production of the recorder. His attorney asserted that the recorded conversation between Latham and Hardt appeared to have several breaks in it. Latham's counsel claimed that he had contacted an expert and had been told that both the original tape and the recorder on which it was made would have to be examined to determine if the tape recorder had been stopped or otherwise tampered with during the recording.

Latham's request for production of the tape recorder was made more than three months following his arrest. At a subsequent hearing on the motion, evidence was presented indicating that the recording of Latham and Hardt was made on a recorder borrowed by the troopers from the Statewide Narcotics Unit and subsequently returned. At some point after its return, the recorder was dismantled and used for spare parts on other recorders.

After considering the evidence at the hearing, Judge Cutler concluded that the recorder was unavailable despite the state's good faith effort to produce it. Latham's trial counsel elected not to pursue the issue. He did not move to dismiss the case or request the imposition of any sanctions.

On appeal, Latham belatedly asserts that the failure to produce the recorder deprived him of potentially exculpatory evidence. Latham fails to specify, however, how production of the recorder would have resulted in material exculpatory evidence. There is nothing to establish that any significant part of the recorded conversation was omitted or that any material that might have been omitted would have tended to exculpate Latham. Moreover, Latham's theory at trial was that the recording involved a conversation between Hardt and some individual other than himself. He never claimed at trial that it had been tampered with or was otherwise inaccurate. Latham's failure to preserve this issue by moving to dismiss or requesting other sanctions below thus appears to have been a tactical decision.

Considering the totality of the circumstances, Latham's claim that production of the recorder would have yielded exculpatory evidence appears to be wholly speculative. The trial court did not err in failing to *sua sponte* order dismissal or sanctions. *See, e.g., Williams v. State*, 629 P.2d 54, 63–64 (Alaska 1981); *Putnam v. State*, 629 P.2d 35, 43 (Alaska 1980).

■ Latham additionally argues that the trial court erred in precluding him from inquiring into an allegedly false claim by Hardt that Hardt had once been awarded the congressional medal of honor. Hardt apparently maintained that he had received the medal of honor under a different name for service in Vietnam. The state conceded at trial that it had been unable to find any record of Hardt receiving the award. Latham sought to question Hardt about the claim, indicating that he hoped to be able to secure a military certificate establishing that Hardt had never been given the medal of honor. Judge Cutler found the proposed inquiry tangential and precluded Latham from inquiring into the matter.

The disputed line of inquiry was irrelevant to any matter directly at issue in Latham's case and had no bearing whatsoever on Hardt's bias or motive for testifying. Its only conceivable relevance was on the question of Hardt's general credibility. Ordinarily, however, the general credibility of a witness may not be attacked by evidence of specific incidents of untruthfulness and is subject to impeachment only by

opinion or reputation. *See* A.R.E. 608. Hardt's general credibility was a collateral issue at trial. The trial court is vested with broad discretion to restrict the admission of extrinsic evidence on collateral matters. *See, e.g., Brown v. State,* 779 P.2d 801, 803–05 (Alaska App.1989); *Stumpf v. State,* 749 P.2d 880, 901 (Alaska App.1988). We find no abuse of discretion in this case.

■ Latham finally contends that his sentence is excessive. Judge Cutler sentenced Latham to the presumptive term of seven years for robbery and to terms of one and one-half years for the criminal mischief convictions. The judge suspended the criminal mischief sentences and made them concurrent to each other but consecutive to the robbery sentence. Latham's total sentence was thus eight and one-half years with one and one-half years suspended.

Latham first asserts that the imposition of consecutive terms for his criminal mischief convictions violated the provisions of a plea bargain that he had reached with the state. A careful reading of the record, however, fails to substantiate Latham's assertion.

Second, Latham asserts that there was no justification for imposition of consecutive sentences. In *Farmer v. State,* 746 P.2d 1300, 1301 (Alaska App.1987), we held that consecutive sentences exceeding the presumptive term for the single most serious crime may be imposed only for good reason. Here, the sentencing court could properly conclude that good reason existed to impose a consecutive period of suspended incarceration for Latham's criminal mischief convictions, because the convictions involved conduct which was significantly different from that involved in the robbery and which resulted in harm to different victims. We conclude that the sentencing court did not abuse its discretion in imposing consecutive sentences.

■ Finally, Latham asserts that the sentencing court erred in declining to refer his case to the three-judge panel based on his exceptional prospects for rehabilitation. The sentencing record, however, amply supports Judge Cutler's conclusion that Latham's prospects for rehabilitation were not exceptionally good. *See Kirby v. State,* 748 P.2d 757 (Alaska App.1987). Our independent review of the entire sentencing record convinces us that the sentence imposed below was not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The conviction and sentence are AFFIRMED.