COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Senior Judge Cole
Argued at Richmond, Virginia


SHERRI ANN POLSTON, S/K/A
 SHERRI ANNE POLSTON
                                              OPINION BY
v.        Record No. 1064-96-2       JUDGE LARRY G. ELDER
                                            MAY 27, 1997
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                 William R. Shelton, Judge


        Ned M. Mikula (Rudy, Evans & Mikula, on
        briefs), for appellant.

        Monica S. McElyea, Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.


     Sherri Ann Polston (appellant) appeals her conviction of

possession of marijuana with intent to distribute.  She contends

that the trial court erred in denying her motion to suppress

evidence obtained during a search of her apartment.  She argues

that the magistrate lacked a substantial basis for finding

probable cause to issue the search warrant for her apartment.

For the reasons that follow, we affirm.

                            I.

                          FACTS

     On January 6, 1995, Detective Stuart Graham Powell of the

Chesterfield County police participated in the arrest of an

unidentified person (informant).  Following his[1] arrest,

---

[1]The gender of the informant is not disclosed in the record.
 Informant will be referred to in the masculine gender in order

informant told Detective Powell that he had witnessed the storage and sale of marijuana in appellant's apartment within the past seventy-two hours. Detective Powell had never met informant prior to January 6, and informant had never participated in any "controlled buys" with the police. Detective Powell did not inquire whether or not informant was a registered voter or a person who regularly attended church. In addition, Detective Powell did not recall if he performed a check of informant's criminal record or know if informant was involved in any plea bargaining that was contingent upon his cooperation in appellant's case.

After speaking with informant, Detective Powell wrote an affidavit that stated in relevant part:

> 4.  <u>The material facts constituting probable cause that the search should be made are:</u>  On this date, 1-6-95, a citizen appeared before the magistrate of the Twelth [sic] Judicial District Court and stated the following facts under the penalty of purgery [sic]. This citizen stated that within the past 72 hours he/she observed a quantity of marijuana being stored and being offered for sale at [an apartment on Markview Lane].
>
> \*    \*    \*    \*    \*    \*    \*
>
> 6.  <u>I was advised of the facts set forth in this affidavit, in whole or in part, by an informer. This informer's credibility or the reliability of the information may be determined from the following facts:</u>  The citizen mentioned in section 4 of this document made these statements while under oath and after

to avoid confusion with appellant.

-2-

being advised of the penalty of purgery
[sic] by your affiant.  Your affiant has
been a police officer for over six years
and is currently employed in the vice
and narcotics unit of the Chesterfield
County Police Department.  Your affiant
has made several drug arrests and is
familiar with the drug culture in and
around Chesterfield County.

Detective Powell then brought informant before a magistrate, and informant both swore that all of the information contained in the affidavit was true and testified under oath that "within the last 72 hours [he observed] a quantity of marijuana being prepared and offered for sale at [the apartment on Markview Lane]."  The magistrate then questioned informant about his familiarity with drugs.  In response, informant testified that he had used drugs on a weekly basis for several years and that he was familiar with the drug culture in Chesterfield County. Following this testimony, the magistrate made the following addition to the section of the affidavit addressing the credibility and reliability of informant:

This citizen is a self-admitted drug user
and is familiar with the drug culture in and
around Chesterfield County.

The magistrate issued a search warrant for the apartment. When Detective Powell entered the apartment, he found appellant. After appellant was given her Miranda warnings, she stated that she had marijuana inside her dresser drawers in her bedroom. Another detective recovered 12.74 ounces of marijuana from appellant's dresser.  Appellant also stated that she had been

selling marijuana in order to raise money to pay for Christmas presents.

Appellant was charged with possessing marijuana with the intent to distribute. The trial court denied appellant's motion to suppress the evidence obtained during the search of the apartment. Appellant then entered a conditional guilty plea that was subject to her appeal regarding the denial of her motion to suppress.

## II.

### MOTION TO SUPPRESS

On appeal, appellant does not contend that the facts contained in the affidavit, if credible, failed to provide a substantial basis for the magistrate to find probable cause to issue the search warrant for the apartment on Markview Lane. Instead, appellant challenges the basis for the magistrate's reliance upon the information provided by informant. Specifically, appellant argues that the affidavit provided by Detective Powell failed to objectively establish informant's veracity and basis of knowledge and that the magistrate improperly supplemented the information provided in the affidavit by examining informant under oath regarding his reliability and basis of knowledge. We disagree.

#### A.

The existence of probable cause is determined by examining the "totality-of-the-circumstances." "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the

-4-

circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." The duty of the reviewing court is "simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed."

Miles v. Commonwealth, 13 Va. App. 64, 68-69, 408 S.E.2d 602, 604-05 (1991), aff'd en banc, 14 Va. App. 82, 414 S.E.2d 619 (1992) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

When the factual basis for probable cause is provided by an informer, the veracity, reliability, and basis of knowledge of the informer are "highly relevant" to the magistrate's determination of probable cause. See Gates, 462 U.S. at 230, 103 S. Ct. at 2328. However, the credibility and basis of knowledge of an informer are not independent "elements" that must be "proved" in order for a magistrate to find probable cause. Instead, these considerations are merely factors in the overall "totality-of-the-circumstances" analysis. Id. at 233, 103 S. Ct. at 2329. "[A] deficiency in [either credibility or basis of knowledge] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Id.

The reliability of an informer's tip may be established in different ways depending on the nature of the informer and the manner in which the information provided by the informer reaches

the magistrate. If the informer is a disinterested citizen who is either the victim or eyewitness of a crime, the magistrate is permitted to infer that reasonable information obtained from the citizen is reliable. See Saunders v. Commonwealth, 218 Va. 294, 299-300, 237 S.E.2d 150, 154 (1977). On the other hand, the reliability of a "criminal" informer, such as an "underworld figure" or a "professional informer," should be established by "underlying facts or circumstances buttressing the credibility of the informer." Id. at 298, 237 S.E.2d at 153-54.

The proper method to establish the reliability of "criminal" informers is determined in part by whether or not the informer appears in person before the magistrate and testifies under oath. When the "criminal" informer's tip is in the form of hearsay recited in an affidavit, its reliability may be established by showing that (1) the informer has previously given reliable information; (2) the informer previously has worked with the police and has made controlled buys or worked in narcotic surveillance or other law enforcement efforts; (3) the informer provided detailed information that only a person who had actually observed the criminal activity would know; or (4) the informer has made a declaration against his penal interest. See Boyd v. Commonwealth, 12 Va. App. 179, 187-88 n.2, 402 S.E.2d 914, 919-20 n.2 (1991); Corey v. Commonwealth, 8 Va. App. 281, 288, 381 S.E.2d 19, 23 (1989).

A different situation is presented when an informer appears

in person before a magistrate and testifies under oath regarding his personal observations.  Our Supreme Court has previously held that a magistrate determining probable cause may supplement the information contained in an affidavit with information received orally.  See McCary v. Commonwealth, 228 Va. 219, 231, 321 S.E.2d 637, 643 (1984) (holding that "an insufficient affidavit may be supplemented or rehabilitated by information disclosed to the issuing magistrate upon application for the search warrant").  Thus, an affidavit need not include extrinsic corroboration of a "criminal" informer's veracity when such information is provided orally to the magistrate.  This information may be conveyed orally by the police officer seeking the warrant or through the magistrate's direct examination of the informer while under oath.

> [W]hen an informant appears before a judge or
> magistrate and testifies under oath
> concerning personal observations, there is no
> comparable need for extrinsic corroboration
> of the informant's veracity:  the presiding
> judge or magistrate is able to observe the
> informant's demeanor, is capable of
> questioning the informant, and is provided
> further assurance by the fact that the
> informant's testimony is under oath.

Latham v. State, 790 P.2d 717, 720 (Alaska Ct. App. 1990).

> As with any other similarly situated witness,
> the informant's willingness to submit to an
> oath, and his personal presence and the
> availability for questioning by the
> magistrate [provide] adequate procedural
> safeguards to assure a sound basis for
> assessing veracity and reliability.

McLaughlin v. State, 818 P.2d 683, 686 (Alaska Ct. App. 1991).  However, if the reliability of a "criminal" informer is

established orally, either by information presented by a police officer seeking a search warrant or by information elicited from the informer while testifying under oath before the magistrate, such information must be set forth in the record in order to permit a reviewing court to determine that the magistrate had a substantial basis for finding probable cause.  See Boyd, 12 Va. App. at 186, 402 S.E.2d at 918-19 (stating that "[w]here the basis for concluding that probable cause exists rests upon information provided by an informer, one focus of the inquiry must be upon whether the magistrate could [reasonably and objectively] determine the informer's honesty, veracity, and basis of knowledge").

Appellant relies on Commonwealth v. Haberman, 390 A.2d 279 (Pa. 1978), for the proposition that an informer's credibility cannot be established for Fourth Amendment purposes by the informer's personal appearance before the issuing magistrate. However, we are unpersuaded by Haberman because its Fourth Amendment analysis is outdated.  In Haberman, the Superior Court of Pennsylvania held that an informer's personal appearance before a magistrate in combination with his written acknowledgement that his information was given under penalty of perjury was not sufficient to establish the informer's reliability under the two-pronged Aguilar-Spinelli test.  Id. at 281-82.  Under this test, officers seeking a search warrant were required to provide an independent basis for the issuing

-8-

magistrate to conclude that an informer was (1) knowledgeable and (2) reliable in regard to the information he provided. Id. at 290; see also Tamburino v. Commonwealth, 218 Va. 821, 823-24, 241 S.E.2d 762, 764 (1978). The Haberman court reasoned that the magistrate's in-person assessment of the informer's credibility was not sufficiently independent to satisfy the Aquilar-Spinelli test. Haberman, 390 A.2d at 282.

However, since Haberman was decided, the United States Supreme Court abandoned the rigid, two-pronged test for evaluating an informer's credibility in favor of the "totality-of-the-circumstances" approach. See Gates, 462 U.S. at 238, 103 S. Ct. at 2332. For this reason, we do not believe that the Haberman court's reasoning and holding are cogent. Instead, Gates opens the door for police officers to establish the credibility of an informer in a variety of ways, including through the personal appearance of the informer under oath before the issuing magistrate. The credibility of an informer is now only a factor in a magistrate's determination of probable cause. Id. at 230, 103 S. Ct. at 2328. The credibility of an informer is based upon both his basis of knowledge and his reliability, and "a deficiency in one may be compensated for . . . by a strong showing as to the other." Id. at 233, 103 S. Ct. at 2317. Unlike in the days of the Aquilar-Spinelli test, a magistrate's determination of probable cause, which includes some consideration of an informer's credibility, is ascertained from

the circumstances of the particular case.  <u>Id.</u> at 238, 103 S. Ct. at 2332.  Nothing in <u>Gates</u> precludes the police from establishing an informer's credibility through a magistrate's in-person examination and assessment of the informer while under oath.

B.

Turning to the facts of this case, we first hold that informant was not a "citizen" informer whose reliability could be inferred by the magistrate.  Although the record did not establish either that informant had a criminal record or that informant was a "professional informer," the record did indicate that informant was under arrest when he provided the information regarding the apartment on Markview Lane to both Detective Powell and the magistrate.  While the record does not expressly establish that informant expected any gain or concession in exchange for his information, we cannot say that informant, whose cooperation with the authorities began only after his arrest, was an ordinary citizen who "act[ed] with an intent to aid the police in law enforcement because of his concern for society or for his own safety."  State v. Paszek, 50 Wis.2d 619, 630, 184 N.W.2d 836, 843 (1971).  Thus, some indicia of informant's credibility was required before the magistrate could rely on the informant's information as a basis for finding probable cause.

We next hold that the information received by the magistrate regarding informant's reliability and basis of knowledge provided a substantial basis for the magistrate to rely on informant's observations when making his probable cause determination.  Although the affidavit as it was written prior to informant's appearance before the magistrate failed to provide sufficient information for the magistrate to objectively evaluate

informant's reliability, this defect was cured by the information elicited by the magistrate when informant testified under oath before him. First, the reliability of informant was enhanced by the fact that he testified under oath before the magistrate that he saw marijuana for sale in the apartment on Markview Lane, thus subjecting himself to criminal liability if his testimony was fabricated. See Gates, 462 U.S. at 233-34, 103 S. Ct. at 2330 (stating that giving information while under penalty of perjury can bolster the reliability of the informer). In addition, informant's reliability was further strengthened when the magistrate elicited a statement from informant that was against his penal interest. The magistrate asked informant about his experience with drugs, and informant testified that he had used drugs at least once a week for several years. See United States v. Harris, 403 U.S. 573, 583, 91 S. Ct. 2075, 2082, 29 L.Ed.2d 723 (1971) (stating that "[p]eople do not lightly admit crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime . . . carry their own indicia of credibility . . . ."). Finally, the magistrate's examination of informant elicited that informant had a strong basis for his knowledge that marijuana was for sale in the apartment. In response to the magistrate's questions, informant testified that he was familiar with both drugs and the drug culture in Chesterfield County and that his knowledge of the sale of marijuana in the apartment on Markview Lane was based upon his

personal observations within the past seventy-two hours.  See Spinelli v. United States, 393 U.S. 410, 416, 89 S. Ct. 584, 589, 21 L.Ed.2d 637 (1969), abrogated on other grounds by Gates, 462 U.S. at 238, 103 S. Ct. at 2332 (stating that an informer's declaration that he "personally observed" the information disclosed by him would sufficiently establish his basis of knowledge).  Considering all of the information regarding informant's reliability and strong basis of knowledge that was elicited during informant's appearance before the magistrate, we conclude that any defect in the affidavit was cured and that the magistrate had a substantial basis for finding probable cause to issue a search warrant for the apartment.

Appellant's reliance on Tamburino v. Commonwealth is misplaced.  218 Va. 821, 241 S.E.2d 762 (1978).  Tamburino was decided when the Aguilar-Spinelli test was still applicable to a magistrate's determination that an informer was reliable.  See id. at 823-24, 241 S.E.2d at 764.  The only issue in Tamburino was whether the information contained in the police officer's affidavit satisfied the "reliability" prong of the Aguilar-Spinelli test.  Id. at 822, 241 S.E.2d at 763.  The magistrate had concluded that the informer's hearsay statement that drugs were present in the defendant's apartment was reliable because the informer (1) was a "concerned citizen," (2) admitted that he was familiar with the local drug culture and was a user of drugs, and (3) performed a controlled buy for the police.  Id.

at 822-23, 241 S.E.2d at 763. Our Supreme Court held that:

> while the admission by the informant that he
> was associated with the drug culture, and was
> a user of marijuana, would not alone be
> sufficient to establish his credibility, it
> is a factor to be considered.

Id. at 825, 241 S.E.2d at 765. The court went on to hold that these admissions in combination with the informer's controlled buy were sufficient to establish the informer's reliability under the Aquilar-Spinelli test. Id.

Tamburino does not control this case because the credibility of informant is not subject to the same rigid, two-pronged scrutiny that was applicable in Tamburino. Despite this difference, informant's credibility in this case was similarly buttressed. Like the informer in Tamburino, informant admitted that he used drugs and was familiar with the local drug culture. Although informant's credibility in this case was not strengthened by his performance of a controlled buy, it was additionally bolstered by his in-person testimony under oath before the magistrate and the fact that he had directly observed drugs offered for sale in the apartment on Markview Lane.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

-14-

Benton, J., dissenting.


When an accused challenges the validity of a search warrant, "the duty of a reviewing court is . . . to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (citation omitted). Because in this case the magistrate lacked a "'substantial basis for . . . concluding' that probable cause existed," id., I would hold that the warrant was invalid and reverse the conviction.

The following facts were presented to the magistrate: (1) the informant had seen "a quantity of marijuana being stored and being offered for sale at . . . [an] apartment" on Markview Lane, and (2) the informant was a "self-admitted drug user and [was] familiar with the drug culture in and around Chesterfield County." The majority concedes that these facts, alone, are insufficient to establish probable cause. The majority concludes, however, that the magistrate properly found probable cause because the magistrate's opportunity to view the informant, in person, "cured" the otherwise defective affidavit.

The majority bases its conclusion on three factors: (1) one of the statements made by the informant, not related to the information regarding Polston, constituted a statement against penal interest; (2) because the informant told the police that the informant was familiar with drugs and the drug culture in Chesterfield County, the informant had a "strong basis for his

knowledge," and (3) the informant was under oath and, thus, was subject to criminal prosecution for perjury in the event that the informant lied. In the abstract, the factors identified by the majority are persuasive; in the context of this case, they carry negligible weight.

When asked to determine whether a magistrate had sufficient information to determine that probable cause existed, "a reviewing court must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). However, when the police fail to corroborate a tip from an unidentified informant, but instead seek to prove the informant's credibility by allowing the magistrate to view the informant in person, a reviewing court cannot ignore facts, which potentially destroy the informant's credibility, that were not presented to the magistrate.

Numerous facts in the record were not presented to the magistrate. The magistrate was never informed that the informant was under arrest at the time he spoke to the magistrate. Indeed, the informant was misleadingly described in the officer's affidavit as a "citizen informant." At the hearing on the motion to suppress, the officer's testimony revealed that the informant "was a citizen, but he was under arrest at the time" he was brought before the magistrate. The officer also testified that he had not checked to determine whether the informant previously had been convicted. The officer further testified that he did

not know whether the informant received any reduction in the charges against him in exchange for the assistance he provided in Polston's case.

Without knowledge of the potential for bias created by the informant's status as an arrested criminal suspect, the magistrate was ill-equipped to judge the informant's credibility. The majority, and perhaps also the magistrate, rely heavily on the fact that the informant made a statement against penal interest by admitting his drug use. However, if the informant made his statements because he had entered into a plea agreement requiring such disclosure, the statement would hardly be against his interest. Had the magistrate known of the arrest, he could have pursued this issue to determine whether the informant may have been biased or unduly influenced by a plea agreement or other promise of leniency made by the police or Commonwealth's Attorney. Cf. Christopher Slobogin, Testilying: Police Perjury and What To Do About It, 67 U. Colo. L. Rev. 1037, 1050 (1996) (asserting that "the[] informant, or even someone else acting as an informant, [can be coached] to lie about the information necessary for probable cause").

The second factor relied upon by the majority, the informant's experience with drugs, lacks substance. The police officer's affidavit is merely a "boiler plate" recitation that the officer "is familiar with the drug culture in and around Chesterfield County . . . [and the informant] is familiar with

-17-

the drug culture in and around Chesterfield County."  The

informant's statement of his familiarity with the drug market

bore little relation to the inquiry whether the informant had an

adequate basis for concluding that marijuana was being offered

for sale at the apartment.  The informant's statement was overly

general and lacked any factual detail.  The informant did not

state precisely when he had seen the marijuana, who was in

possession of the marijuana, the quantity of marijuana the

informant had seen, the reason the informant was present, or

where in the apartment the marijuana was located.  Most

importantly, the informant did not provide any explanation for

the conclusion that it was being offered for sale at the

apartment.

> Reading this affidavit in a "practical, common-sense" manner, the only claim of possible wrongdoing is the averment that, within three days prior to the affidavit date, the informant was on the suspect premises and, while there, he saw some quantity of marijuana "expressly for the purpose of unlawful distribution."  [The detective] presents no underlying factual circumstances to support the informant's knowledge regarding distribution, nor the detective's own "belief" that these quantities of marijuana were present "for the purpose or with the intention of unlawful possession, sale or transportation," or even that the marijuana would be on the premises when the warrant was executed.

United States v. Weaver, 99 F.3d 1372, 1378 (6th Cir. 1996); see

also United States v. Reddrick, 90 F.3d 1276, 1280 (7th Cir.

1996).

The final factor relied on by the majority, the fact that the informant made his statement under oath, is also of little weight. Due to the nature of the informant's statement, the possibility of criminal prosecution for perjury had little impact on the informer's credibility. The informant merely swore to the statement that "within the past 72 hours he/she observed a quantity of marijuana being stored and being offered for sale at the apartment." The informant did not identify the occupant of the apartment or the person who was selling marijuana. Because this statement is vague, the Commonwealth would have great difficulty proving its falsity. Cf. Commonwealth v. Slater, 363 A.2d 1257, 1259 (Pa. Super. Ct. 1976) ("[T]he course from an informant's false statement to his conviction is a long and tortuous one. Statistically, the chances of such a prosecution are almost nonexistent."); Slobogin, supra, at 1045 (stating that affiants often commit perjury in the warrant process because they are "seldom made to pay for their lying"). Thus, a successful prosecution for perjury would be highly unlikely.

In view of the scant information attributed to the informant and the lack of detail, the informant was likely aware that the truth or falsity of the statement was not verifiable. Moreover, in a case in which an anonymous informer did not testify under oath, this Court nevertheless observed that "if the informer had fabricated his report, he may have subjected himself to criminal liability." Boyd v. Commonwealth, 12 Va. App. 179, 191, 402

-19-

S.E.2d 914, 922 (1991). The fact that the informant made his accusation under oath exposed the informant to a risk faced by all other informants and, thus, provides no basis for giving greater credit to this informant.

Moreover, the police did not corroborate or have prior knowledge of the information that the officer received from the informant. "An informant's tip is rarely adequate on its own to support a finding of probable cause." United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991). The burden of establishing probable cause is greater when the informant is unidentified. See Alabama v. White, 496 U.S. 325, 329 (1990). Mere corroboration by the police of static details reported by the informant will not suffice to cure the inadequacy of a tip from an unidentified informant. Cf. Gates, 462 U.S. at 244-46 (holding that independent corroboration of predicted activity can support a finding of probable cause); Joe Metcalfe, Anonymous Tips, Investigatory Stops and Inarticulate Hunches -- Alabama v. White, 110 S. Ct. 2412 (1990), 26 Harv. C.R.-C.L. L. Rev. 219, 234 (1991) ("[I]f corroborated facts serve to bolster a tip, then uncorroborated facts should likewise undermine confidence in the reliability of the information in the possession of the police.") (citing Gates, 462 U.S. at 234).

The majority relies upon Latham v. State, 790 P.2d 717 (Alaska Ct. App. 1990). However, the informant in that case was not an arrested criminal suspect. See id. at 719. The informant

-20-

was identified to the magistrate, testified before the magistrate about a robbery that the police previously knew had occurred, and provided the magistrate with "numerous details about the robbery that he would not have been aware of without having spoken with someone who was actually involved in the crime."  Id.; see also McLaughlin v. State, 818 P.2d 683, 685 (Alaska Ct. App. 1991) (upholding a warrant based upon an informant's testimony about a controlled buy).  Those facts and circumstances did not exist in this case.

The record in this case does not prove that the informant was identified by name to the magistrate.  The informant was an arrested criminal suspect.  The informant gave no details of the alleged offense.  The informant did not report an offense that was previously known by the police to have occurred.  Moreover, the trial judge made no findings in this case that the magistrate received any information other than the bare recitals in the affidavit.[2]  The paucity of information and the absence of any

---

[2]The record proved that after the officer talked to the informant and before the officer took the informant to the magistrate, the officer typed on the affidavit for search warrant the following recital:

> On this date 1-6-95, a citizen appeared before the magistrate of the Twelth Judicial District Court and stated the following facts under oath and the penalty of purgery.  This citizen stated that within the past 72 hours he/she observed a quantity of marijuana being stored and being offered for sale at the apartment mentioned in section two of this document.

corroboration of the underlying factual circumstances establish that the informant's reliability was not adequately substantiated in this case.  See Weaver, 99 F.2d at 1378-79.  Indeed, as in Weaver, the informant in this case gave no information regarding "a description of the marijuana and how it was maintained, . . . the location in the residence where the marijuana . . . was seen or kept, a description of [the seller], [or] . . . information on the distribution operation . . . ."  Id. at 1378 n.4.

Because the information provided by the informant was vague and lacking in detail, I would hold that the magistrate lacked a substantial basis to conclude that the informer's conclusion was accurate.  See Corey v. Commonwealth, 8 Va. App. 281, 289, 381 S.E.2d 19, 23 (1989) (holding that a tip lacked adequate detail); cf. Boyd, 12 Va. App. at 191, 402 S.E.2d at 922 (upholding a warrant based upon similar allegations, which were combined with additional details provided by the informant and corroborated by the police).

The holding in this case allows the police, under circumstances otherwise insufficient to support a police officer's warrant application, to take an unidentified, arrested criminal suspect before a magistrate, present the arrested suspect as a "citizen informant," and bathe the informant with credibility if the informant swears to vague, unverifiable facts.

Such a procedure reduces the Fourth Amendment to a fiction and the magistrate to "a rubber stamp for the police."  United States v. Ventresca, 380 U.S. 102, 109 (1965).

> It makes all the difference in the world
> whether one recognizes the central fact about
> the Fourth Amendment, namely, that it was a
> safeguard against recurrence of abuses so
> deeply felt by the Colonies as to be one of
> the potent causes of the Revolution, or one
> thinks of it as merely a requirement for a
> piece of paper.

United States v. Rabinowitz, 339 U.S. 56, 69 (1950) (Frankfurter, J., dissenting).

I dissent.